TRAVELERS INSURANCE COMPANY et al., Respondents, v. W. F. SAUNDERS & SONS, INC., et al., Appellants, and DONALD HALSTROM, Respondent.

Third Department, March 13, 1963.

*Mackenzie, Smith, Lewis, Michell & Hughes* (*John F. Lawton* of counsel), for W. F. Saunders & Sons, Inc., and another, appellants.

*Haskell & Foley* (*Richard J. Shay* of counsel), for the Travelers Insurance Company and others, respondents.

*Brevett & Woods* for Donald Halstrom, respondent.

Coon, J.  Plaintiffs brought this action for a declaratory judgment declaring that plaintiffs Carpenter Hauling and Rigging Co., Inc., and Philip Scott, were additional "insureds" under a comprehensive liability insurance policy issued by Globe Indemnity Company, defendant, to the defendant W. F. Saunders & Sons, Inc.  The case was submitted to a Trial and Special Term of Supreme Court, upon a stipulated statement of facts. Judgment was rendered in favor of the plaintiffs, and the defendants Saunders and Globe appeal therefrom.  The question to be determined is the proper interpretation and application of the now familiar "loading and unloading" provisions of such an insurance policy.

Saunders contracted with the general contractor on a building construction job to supply ready-mix concrete to the job.  Carpenter subcontracted to provide a crane and permanently attached bucket to convey the concrete from Saunders' truck to the point where it was to be used in the construction.  An employee of Saunders was standing on a catwalk of the truck regulating and directing the flow of concrete into the crane bucket.  Upon signal this employee stopped the flow of concrete and the bucket was supposed to be raised by the crane to the second floor, emptied and returned to the truck for more concrete.  In this process the crane overturned and Halstrom, an employee of another subcontractor, was injured and brought an action against Carpenter and Scott, the latter the operator of the crane.  More detailed facts are contained in the stipulation.

The trial court, relying largely upon the case of *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490), we think correctly decided that this accident happened in the process of unloading, which was not completed until the concrete was delivered to the place where it was to be used.  The *Wagman* case involved loading a truck, but it involved the intervention of someone not employed by the named insured and did not involve negligence on the part of the named insured.  There is no difference in the legal principles applicable to loading or unloading.  Here Saunders' truck was obliged to remain at the place of unloading until it was completely empty as the result of several trips of the crane bucket.  By its very nature it is wholly impractical

to dump wet concrete on the ground for later removal. The process by which it was being delivered was part and parcel of unloading, and the unloading was not completed until delivery was effected and it was not completed at the time of the accident.

Appellants concede in their brief that the "complete operations" theory has been adopted in the State of New York and that the "at rest" theory has been rejected, yet they seem to argue the application of the "at rest" theory on this appeal.

Since the trial and decision in this case the Appellate Division, First Department, has handed down a decision in *Lamberti* v. *Anaco Equip. Corp.* (16 A D 2d 121), where the facts are most strikingly similar and in fact almost identical with those in the case at bar. Although in the *Lamberti* case the decision was by a divided court and appellants get some comfort from the dissenting opinion, the decision of the court is contrary to their contention on this appeal.

The judgment should be affirmed, with costs to respondent.

HERLIHY, J. (dissenting). I agree with the majority that this case is governed by *Wagman* v. *American Fid. & Cas. Co.* (304 N. Y. 490, 494) where the court interpreted the meaning of the words "loading and unloading", a proviso in a liability insurance policy, to "cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier".

The policy provides: "II. Definition of Insured. The unqualified word ' insured ' includes the named insured and also includes * * * any person or organization legally responsible for the use thereof * * * 3. Definitions: (f) Purposes of Uses. Use of an automobile includes the loading and unloading thereof."

Here, the question to be determined is the application of the *Wagman* doctrine to the stipulated facts in this case. In deciding who is an "insured" under this policy, it is necessary to factually determine when the goods handled have been delivered or unloaded.

It is obvious that the "entire operation" depends upon the nature of the goods being delivered and the "business" of that carrier. In other words, goods may be delivered at a particular point in one situation, but given the same goods, the point of delivery may be at another point in a different situation, for delivery is a *fact* and not a rule of law.

This action is concerned with the contracts of subcontractors and where legal responsibility can be readily perceived and separated. The stipulated statement of facts agrees that the defendant-appellant subcontracted "*to supply the concrete to*

*the job* ''. It was further agreed that the plaintiff-respondent subcontracted '' to provide a certain Erie crane and its operator and oiler, which crane was to be utilized for *transporting the cement* from the point where it was *unloaded* into the crane bucket by Saunders' ready mix trucks to a point on the second floor of the building addition where it was *unloaded* from the bucket and utilized in the construction of said addition ''. (Emphasis supplied.) It is readily perceivable, under the stipulation, that the '' unloading '' was twofold, (1) by the appellant and (2) by the respondent. If the '' complete operation theory '' is to be applied to such a contractual relationship, then liability under the hauler's policy could extend through several subcontractors '' unloading '' until the product is finally used.

In this case it is apparent that delivery or unloading was meant to be the bucket of the crane, from which it could then be *used* at any point upon the building. To hold that delivery is at the point of use in these circumstances overlooks the physical limitation imposed by the nature of the goods and the business of the carrier. Modern methods of conveyance, such as a ready-mix concrete truck, substantially alter prior methods of doing business, and the fact that the subcontractor did not provide a bucket large enough to permit the complete unloading of the cement in one scoop should not be the determining factor for extending liability under the hauler's policy.

The strained construction of the provisions of the insurance policy, as applied here, is neither reasonable nor practical and, considering the stipulated facts, unrealistic.

In *McGrail* v. *Equitable Life Assur. Soc.* (292 N. Y. 419) the court said at page 424: '' Rules for the construction of contracts of insurance do not differ from those to be applied to the construction of other contracts.''

The majority memorandum cites *Lamberti* v. *Anaco Equip. Corp.* (16 A D 2d 121) and refers to the dissenting opinion therein, and with which I am in general agreement.

I would reverse the order and dismiss the complaint on the ground that, in accordance with the stipulated facts, plaintiffs Carpenter Hauling and Rigging Co., Inc., and Philip Scott are not insured under the policy of insurance issued by the defendant Globe Indemnity Company.

BERGAN, P. J., GIBSON and REYNOLDS, JJ., concur with COON, J.; HERLIHY, J., dissents in an opinion.

Judgment affirmed, with costs to respondents.