KOMOROWSKI, Plaintiff, v. KOZICKI and others, Defendants and Third-Party Plaintiffs and Respondents: WICKES LUMBER COMPANY and others, Third-Party Defendants and Respondents: HARTFORD ACCIDENT & INDEMNITY COMPANY, Third-Party Defendant and Appellant.

NEERDAELS, by Guardian *ad litem,* and others, Plaintiffs and Respondents, v. KOZICKI and others, Defendants and Respondents: HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Appellant.

*Nos. 126, 127. Argued October 28, 1969.—Decided December 2, 1969.*
(Also reported in 172 N. W. 2d 329.)

96

98

For the appellant there were briefs by *Welsh, Trowbridge, Bills, Planert & Gould,* and oral argument by *Vance M. Waggoner,* all of Green Bay.

For the respondents Ralph Kozicki, Edward Kozicki, and Roman Kozicki, d/b/a Kozicki Brothers Construction Company, there was a brief by *Denissen, Kranzush, Stodola & Mahoney* of Green Bay, and oral argument by *Shannon D. Mahoney.*

HANLEY, J.  The sole issue raised upon this appeal is whether the acts of the appellant's insured, which allegedly caused the injuries complained of, constituted acts of "loading or unloading" and were within the coverage of the policy.

It is of paramount importance in these cases to note that the causal negligence of the appellant's insured (*i.e.,* the negligence of Donald Kittell) has not as yet been determined and that in determining the appellant's liability for the negligence of its insured two distinct questions are involved: (1) Did the acts complained of cause the injuries; and (2) were such acts part of the "loading or unloading" of the insured vehicle?

It is the appellant's contention on this appeal that it is not liable for the injuries sustained by Komorowski and Neerdaels because their injuries did not result from the loading or unloading of the insured's vehicle.  This contention is predicated upon the fact that the actual unloading had been completed, the driver had been paid, and the vehicle had departed before sustainment of the injuries.

It is the respondent's position, however, that a negligent act can cause injury even a substantial period after the actor has completed the act and left the scene of its occurrence.

It is apparent from these arguments that while the appellant is directing its attention to the question of coverage, the respondent appears to argue in terms of

injury causation. This confusion, however, is understandable in that, as stated in the annotation at Annot. (1964), 95 A. L. R. 2d 1122 the decisions of most jurisdictions have failed to treat these questions separately.

Only the question of coverage is before this court. In reference to this question, two doctrines of interpretation have developed in determining whether a given act is part of the "loading or unloading" of a vehicle.

Relying upon the "coming to rest" doctrine, which it implies has been adopted in this jurisdiction, the appellant contends that there was no coverage in the instant case and thus there can be no recovery. The respondent, however, contends that Wisconsin is no longer firmly committed to this doctrine and either has adopted, or should adopt, the "complete operation" doctrine.

As stated in 13 Vanderbilt L. Rev. (1960), 903, 904:

> "The 'coming to rest' doctrine contemplates that loading does not commence until the items of cargo have left their place of rest (or in some cases the last place where they could be at rest) away from the automobile and are being physically carried or lifted onto the vehicle, and that unloading ceases when the items of cargo have reached a place of rest (or in some cases the first place where they could come to rest) away from the vehicle and are no longer being physically carried or lifted off of the vehicle. . . .
>
> "The 'complete operation' doctrine contemplates that the loading commences when the items of cargo leave their original location on the way toward the vehicle (notwithstanding later temporary 'comings to rest' on the way) and that unloading does not cease until the items of cargo have reached the final point of delivery toward which the transportation of the cargo by automobile was a part. . . ."

It is apparent that the "complete operation" doctrine is an expansion of the "coming to rest" doctrine and includes a greater range of acts within the term "loading and unloading." As stated in Annot. (1964), 95 A. L. R. 2d 1122, 1129:

"Under the 'coming to rest' doctrine, unloading within the meaning of the unloading clause comprises only the actual removing or lifting of the article from the motor vehicle up to the moment when the goods which are taken off the motor vehicle actually come to rest and every connection of the motor vehicle with the process of unloading ceases. Under the so-called 'complete operation' doctrine, however, the 'loading and unloading' clause covers the entire process involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made, and for all practical purposes, any distinction between 'unloading' and 'delivery,' and between 'loading' and 'preparatory actions,' is not considered."

In reference to unloading, the "complete operation" doctrine, unlike the "coming to rest" doctrine, would apply where an item had already been removed from the vehicle and was being further transported to its final resting place. An illustrative example of such a situation is *Turtletaub v. Hardware Mut. Casualty Co.* (1948), 26 N. J. Misc. 316, 62 Atl. 2d 830, wherein the court allowed recovery for injuries sustained when a hand truck, which was transporting cases of soda from the delivery truck to the purchaser's storage area, struck and injured an individual. Thus the act of transporting the soda by hand truck was in effect held to be an act of unloading.

Again, in reference to unloading, a classic example of what has since come to be known as the "coming to rest" doctrine is *Stammer v. Kitzmiller* (1937), 226 Wis. 348, 276 N. W. 629. There a deliveryman had removed his merchandise from the truck, opened a hatch in the sidewalk, and carried the merchandise into the purchaser's storage area. While still in the customer's tavern, a pedestrian fell through the open hatch and was injured. This court held that the act of opening the hatchway was not within the process of unloading the truck and relieved the automobile insurer from liability under its "loading and unloading" clause. In its apparent adoption of the "coming to rest" doctrine, this court stated:

". . . When the goods have been taken off the automobile and have actually come to rest; when the automobile itself is no longer connected with the process of unloading; and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. . . ." *Stammer v. Kitzmiller, supra,* at pages 352, 353.

Despite this language, however, the respondent maintains that Wisconsin is no longer firmly committed to the "coming to rest" doctrine and places reliance upon the subsequent cases of *Hardware Mut. Casualty Co. v. Saint Paul-Mercury Indemnity Co.* (1953), 264 Wis. 230, 58 N. W. 2d 646; *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. 2d 549, 97 N. W. 2d 485; and *Peterson v. Sinclair Refining Co.* (1963), 20 Wis. 2d 576, 123 N. W. 2d 479.

In *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 162 N. W. 2d 626, this court was called upon to review the denial of a motion for summary judgment which had been predicated upon the interpretation of a "loading and unloading" clause. Recognizing the importance of the question therein involved, Mr. Chief Justice E. HAROLD HALLOWS stated, at page 631, that the "question of 'loading and unloading' coverage ought not be decided upon the affidavits presented."

In the instant case, however, the pertinent facts have been stipulated and since the Wisconsin position on this matter is not as clear as it might be, a review of these cases is in order.

In *Hardware Mutual, supra,* a deliveryman double-parked his truck and opened a hatchway in the sidewalk preparatory to taking beer kegs from the truck and into the customer's basement. After opening the hatchway and before removing the beer kegs, the driver moved his truck to allow another vehicle to pass. While so doing, a pedestrian fell through the hatchway and was in-

jured. The court held that the act of opening the hatchway was a necessary part of the unloading process. By so holding, we think the court overruled *sub silentio* the *Stammer Case.* Clearly, if the act of opening the hatchway in *Hardware Mutual* was a *necessary* part of the unloading, it also was in the *Stammer Case.*

Additional support for the contention that *Stammer* is no longer viable in this jurisdiction is found in the *Ermis Case.* There the plaintiff, an employee of a salvage company, had gone to a manufacturing company to procure a load of scrap metal. The plaintiff was allegedly injured when an overhead crane, operated by an employee of the manufacturing company, dropped upon his hand. After an action was commenced against it by the plaintiff, the manufacturing company impleaded the automobile insurer of the plaintiff's employer, alleging that the plaintiff's injuries had resulted from the "loading or unloading" of a motor vehicle owned by the plaintiff's employer. In reversing a judgment which had dismissed the cross complaint against the automobile insurer, this court stated:

> "The words 'including the loading or unloading thereof' are an extension of the use clause and cover operations or acts in which the movement of the truck itself does not play a part. . . ." *Ermis v. Federal Windows Mfg. Co., supra,* at page 553.

The appellant contends that this court did not adopt the "coming to rest" rule in the *Stammer Case* by name and has never adopted either rule by name in any case. This contention appears to be correct; however, the court, in *Stammer,* adopted a more narrow construction of the policy clause, while in *Hardware Mutual* it adopted the broader construction of the policy clause.

It is to be noted that in the policy of insurance involved in the instant case the appellant agreed to pay on behalf of the insured all sums which the insured shall become

legally obligated to pay as damages because of bodily injury caused by accident "arising out of the ownership, maintenance or use of the automobile," including the "loading and unloading."

The effect of this language is to extend the coverage to include acts of "loading and unloading" incidental to the use of the vehicle.

The instant policy does not require that the injury occur during or in the course of the "loading and unloading." The appellant insurance company did not so limit its liability. The words "arising out of" are broad, general and comprehensive, effecting broad coverage.

If the draftsman of the appellant's policy intended to limit coverage to accidents which occur in the course of "loading and unloading," he could have specifically provided so.

To remove any uncertainty surrounding the position of this court, we now specifically adopt the broader construction of the policy which other jursdictions refer to as the "complete operation" rule and as indicated in Annot. (1964), 95 A. L. R. 2d 1122, has become the majority view in this country. For purposes of this appeal, however, an examination of the alternative doctrine reveals that it is immaterial which of the doctrines is adopted.

The respondent in each of his cross complaints against the appellant has alleged that the (employee of the) appellant's insured was (1) negligent as to the loading of the vehicle in that he loaded the lighter boards first, thereby causing the heavier boards to be at the top of the pile; and (2) negligent as to the unloading of the vehicle in that by merely sliding the chained lumber off of the truck he failed to unload the heavier lumber first, thereby allowing it to remain at the top of the pile.

Since the "actual acts" of loading (placing lumber onto the truck) and unloading (placing lumber onto the

ground) were performed in an allegedly negligent manner, coverage is afforded in the instant case without resort to the more inclusive "complete operation" doctrine.

We hold that the automobile policy insured Schwahn Lumber Transfer against liability for the claim made on behalf of plaintiffs.

It must be understood, of course, that insured's liability to pay for plaintiffs' injuries is not being determined in the instant suit and that appellant will be liable to pay for plaintiffs' injuries only if the evidence presented on trial shows that the negligent acts occurred as alleged and proximately caused plaintiffs' injuries.

*By the Court.*—Orders affirmed.