AMERY MOTOR COMPANY and others, Plaintiffs, v. COREY and others, Defendants and Third-Party Plaintiffs and Appellants: INDIANHEAD TRUCK LINE, INC., Defendant: UNLIMITED OPPORTUNITIES, INC., and others, Third-Party Defendants and Appellants: AGRICULTURAL INSURANCE COMPANY and others, Third-Party Defendants and Respondents.

*No. 65.   Argued February 2, 1970.—Decided March 6, 1970.*
(Also reported in 174 N. W. 2d 540.)

For the appellants there were briefs by *Tinkham, Smith, Bliss & Patterson* of Wausau, for Warren W. Corey, S & F Petroleum Company, Unlimited Opportunities, Inc., V. S. Stenseng, and E. W. Fierke, Jr., and by *Anderson, Davis, Witkin & Fredrickson* of Superior, for Cities Service Oil Company, attorneys, and *Albertson, Norton, Jergens & Gunderson* of Stillwater, Minnesota, and *Louis G. Nagler* of Balsam Lake, of counsel, and oral argument by *Richard P. Tinkham.*

For the respondents there were briefs by *Doar, Drill & Norman* of New Richmond, and oral argument by *W. T. Doar, Jr.*

HALLOWS, C. J. While this appeal was en route, this court decided *Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis. 2d 335, 168 N. W. 2d 581, which rendered much of the material in the main briefs immaterial. In *Lukaszewicz* we held invalid as contrary to the public policy expressed in the omnibus statute, sec. 204.30 (3), Stats., a limitation of the additional insured's interest in a loading and unloading coverage attached to an automobile liability policy which excluded coverage "if the accident occurs on premises . . . owned, rented or controlled either by the person or by the employer of the person against whom claim is made . . . ." That decision now changes the issue on appeal to whether the owner-lessees of the bulk plant are additional insureds because of their relationship to the use of the truck in unloading the gasoline.

While these policies were issued in Minnesota they purport to be governed by Wisconsin law. Attached to the basic 50-page policy of Agricultural Insurance Company, which policy was adopted by reference by the other two insurers, is a Wisconsin Insurance Endorsement for

Blanket Policies. The purpose of this endorsement is to conform the policy to the statutory requirements for common motor carriers of property, one of which requires the policy to comply with the omnibus statute. There is no question that the policies cover the risk of loading and unloading. On page seven of the basic policy is attached the usual loading and unloading endorsement which is substantially in the same form as considered in *Lukaszewicz*.

The insuring agreement of the policy provides for payment of all sums the insured is legally obligated to pay as damages caused by accident "arising out of the use of the automobile." The Wisconsin insurance endorsement refers to "use" of the motor vehicles. An (additional) insured in the policy is defined as "any person while using the [owned] automobile . . . provided the actual use of the automobile is by the named insured . . . or with [his] permission. . ." Use of an automobile by the terms of the policy "includes the loading and unloading thereof." The omnibus sec. 204.30 (3), Stats., provides "No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy." This is extended coverage to a person only if or while he is operating the automobile when it is being used for purposes and in the manner described in the policy and with the named insured's consent.

In *Lukaszewicz* in construing the word "operating" in the omnibus clause, which is the key word in the definition of an additional insured for our present purpose, we stated the word "operating" in the statute in connection with loading or unloading of an automobile meant

"participating in the loading and unloading activity." In an automobile liability policy, as distinguished from a property liability policy, the purpose is coverage of causal negligence in the "use" of the automobile. Persons actively engaged in loading and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile and are covered by the loading and unloading provision of the policy. In *Lukaszewicz* the loading and unloading coverage of the truck was extended to the employee of the owner of the premises on which the truck was being unloaded because he was using a forklift to remove concrete products from the truck. This coverage was not because the truck was on the premises of the employer or because the accident happened there but because the employee of the owner of the premises was actually participating in removing from the truck its load of concrete products and thus was using or operating the truck.

In *Wagman v. American Fidelity & Casualty Co.* (1952), 304 N. Y. 490, 109 N. E. 2d 592, the court made a similar determination and extended the omnibus coverage of unloading by adopting the complete-operation doctrine of unloading. In this case, an employee of the shipper was checking the clothes from the store being put in a truck at the curb. A checker, an employee of the store, who stood at the truck counting clothes being loaded, bumped a pedestrian on the sidewalk when he turned and walked from the truck to the store to check other clothes to be shipped. The court held the employer of the checker to be an additional insured because the employee-checker was engaged in the operation of loading the truck and thus "using" the truck within the meaning of the policy.

We think it is important for coverage that the negligence occur not only during the loading and unloading

operation but that it be a part of that operation. In *Komorowski v. Kozicki* (1969), 45 Wis. 2d 95, 172 N. W. 2d 329, we enlarged the concept of loading and unloading and adopted the "complete-operation" doctrine which is generally understood to mean not only the direct and continuous transfer of the goods to and from a vehicle to or from the loading dock or other adjacent place but the complete operation of the pickup of the goods from the premises to the delivery to the premises of the consignee. This is a more realistic concept of loading and unloading as understood in the business world. *See* Annot. (1964), 95 A. L. R. 2d 1122. In *Stammer v. Kitzmiller* (1937), 226 Wis. 348, 276 N. W. 629, which is now overruled, we took the narrower "coming-to-rest" view that loading meant only the immediate act of placing goods upon the vehicle and excluding any preliminary act of bringing the goods to the vehicle and unloading embraced only removing the goods from the vehicle to the first place of rest even though that was alongside of the truck on the sidewalk.

Neither concept of loading or unloading in respect to coverage is concerned with causation but rather with the nature of the acts. Causation has to do with liability of the person covered. Naturally, negligence causing injury must occur while the truck is being loaded or unloaded under either view and the negligent act must be a part of the activity of loading or unloading which constitutes a use of the truck for insurance purposes. *See* Annot. (1946), 160 A. L. R. 1259. One engaged in loading or unloading a truck could be injured by a cause unconnected with the acts of loading and unloading and his cause of action could not be based upon the "use" of the truck. It is likewise true negligent acts of loading or unloading need not result in an injury occurring during such loading or unloading. Normally, an injury is caused at the time of the occurrence of negligence; but in *Komorowski v. Kozicki, supra,* where the negligence included stacking the lumber as part of the unloading

operation, the negligence did not result in an injury until the lumber pile fell sometime after the truck had departed and the unloading was completed. That case pointed out the language of the policy contained no limitation that the injury must occur during the loading or unloading.

In the instant case Houle arrived at the bulk plant with his truck around 1:30 a. m. and parked it at the curb of the street in front of the plant and used the key to unlock the pipes to the bulk tanks. The hose from the truck was then coupled with a pipe and the fuel was pumped from the truck to the tanks. The only apparent participation of the owner-lessees was the furnishing of the key, the placement of the connecting pipes at the curbside and the furnishing of the tanks and the premises. Furnishing the key did not make Houle the agent of the owner-lessees or a loaned employee. He was about his master's business of delivering gasoline. The furnishing of the defective tanks and storage equipment on the premises was no part of the act of unloading and thus using the truck. The tanks were not used by the owner-lessees to unload but were a part of the premises to receive what was being unloaded by Houle. Nor were the tanks equipment used to unload the gasoline in the usual and common meaning of that term. In *Lukaszewicz* if the forklift had been defective instead of its operator being negligent, a closer question would have existed if such defect was the result of negligence of the owner of the premises. See *Ermis v. Federal Windows Mfg. Co.* (1959), 7 Wis. 2d 549, 97 N. W. 2d 485.

In *Chenango Gas Co. v. Allstate Ins. Co.* (1963), 39 Misc. 2d 177, 240 N. Y. Supp. 2d 194, 196, 197, a truck was unloading propane gas into the system owned by the owner of the premises. In doing so, the trucker used the mechanical unloading equipment of the owner of the premises which consisted of a facility for the removal of gas from the truck and discharging it into the system by means of a compressor. This equipment when used was

attached for unloading purposes to the truck and disengaged thereafter. While the owner's equipment was so being used to unload the propane gas, the trucker turned the electric switch to shut off the compressor and through a defect it sparked and caused an explosion. The court held the owners by furnishing the unloading equipment were "using" the propane-gas-delivery truck within the meaning of the loading and unloading clause of the policy.

The line of demarcation must be drawn somewhere and reasonably drawn in respect to the use of an automobile within the meaning of the language of an automobile insurance policy. But the owner-lessees argue any alleged defects in the tanks, although normally covered by property liability insurance, should be covered by the loading and unloading endorsement in Indianhead's truck policy. The owner-lessees rely on *Continental Casualty Co. v. Fireman's Fund Ins. Co.* (10th Cir. 1968), 403 Fed. 2d 291, which so holds. In *Continental* the negligence was the improper construction of the venting of gas tanks at a service station which allowed gasoline fumes from the tanks to vent into the men's washroom. While the tanks were being filled, a customer lit a cigarette in the washroom and an explosion resulted. The court allowed the station owner, who had paid the claim, to recover by way of indemnity because under the loading and unloading coverage of the policy covering the transport truck he was an additional insured. We disagree. The negligent construction of the venting of the gas tank was not a part of the loading and unloading operation but resulted in a condition of the premises which would normally be covered under a comprehensive liability policy on the premises. The Tenth Circuit Court reasoned fallaciously, we think, that "but for" the unloading the accident would not have happened and therefore the station owner was "using" the truck.

While loading and unloading coverage added to an automobile liability policy is comparatively recent, it has been the source of much litigation. Annot. (1957), 51 A. L. R. 2d 924. It was not intended to take the place of comprehensive insurance on the premises. *See* Suter, *Loading and Unloading*, 31 Insurance Counsel Journal 112 (Jan. 1964). Many cases have so held by confining coverage to acts which normally considered are a part of the loading and unloading operation by way of participation therein and excluding safe-place cases. In *Atlantic Mutual Ins. Co. v. Richards* (1968), 100 N. J. Super. 180, 241 Atl. 2d 468, a case for a wrongful death of a truck driver who tripped over an accumulation of boards on a loading dock and fell into an open stairwell, the New Jersey intermediate appellate court held that the unloading coverage did not extend under the omnibus clause to negligent maintenance of the premises because the owner's duty to maintain a safe place "was not a step in the specific operation of unloading a truck." A New York supreme court refused to find an owner of the premises an additional insured under the loading and unloading coverage where injuries were sustained by the trucker who fell from the loading platform due to defective flooring. *Cosmospolitan Mut. Ins. Co. v. Baltimore & Ohio R. R. Co.* (1963), 18 App. Div. 2d 460, 240 N. Y. Supp. 2d 88. The court reasoned the negligence was wholly unrelated to the loading process.

In *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N. E. 2d 191, a workman was injured in a fall from a loading platform due to its defective condition arising from negligent maintenance. The court held no coverage under the omnibus and the unloading clause on the ground there was no causal connection between the use of the truck and the injury. The result of this case is consistent with this court's view of coverage because the relationship from

the standpoint of causation did not amount to participation in the act of unloading.

A case squarely in point is *Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc.* (8th Cir. 1966), 366 Fed. 2d 555. This was a declaratory judgment action to determine coverage under the omnibus and loading and unloading clauses and involved the death of a truck driver from an explosion which occurred while he was transferring propane gas from the truck to the tanks of the owner under a "key stop arrangement." The court held the owner of the tank was not an additional insured and distinguished the cases in which the owner of the premises was considered an insured from those in which he was not on the basis that in the former cases an employee of the party to whom the goods were being delivered was actually engaged in the unloading of the vehicle and thus was "using" the vehicle with the permission of the named insured while in the cases of a defective premises the owner was not engaged in the unloading operation merely by furnishing the premises.

The owner-lessees also argue it was error to sustain the insurer's demurrer because it went only to part of the complaint and not to a cause of action. This may be true in form but the trial court took the view the complaint attempted to state a cause of action for coverage against the insurers based on an alleged oral agreement. Whether this view is correct or not, the trial court was correct in its reasoning that the alleged oral agreement between the owner-lessees and Indianhead, to which the insurers were not a party, did not enlarge the coverage. No recovery could be had on the policy as written because it expressly provided contractual liability of Indianhead had to be based on a written agreement and also the policy excluded from coverage any agreement to indemnify the indemnitee for his own negligence.

*By the Court.*—Order and judgment affirmed.