CONTINENTAL NATIONAL INSURANCE COMPANY, Appellant, v. CARRIERS INSURANCE COMPANY, Respondent.

*No. 103.    Argued September 5, 1972.—Decided October 3, 1972.*
(Also reported in 200 N. W. 2d 584.)

For the appellant there was a brief by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *Alvin A. Stack* of counsel, all of Milwaukee, and oral argument by *Mr. Stack.*

For the respondent there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Phillip E. Crump* of counsel, all of Milwaukee, and oral argument by *Mr. Crump.*

CONNOR T. HANSEN, J. This litigation arises out of a dispute between the respective insurance companies as to the nature and extent of insurance coverage provided to L.C.L. Transit Company (hereinafter L.C.L.) by Carriers.

In a previous action, Henry Erdmann, an employee of L.C.L., secured a judgment against Kohls Food Stores and Sidney Kohl (hereinafter Kohls). The judgment was in the amount of $14,595.19 and represented damages for personal injuries sustained by Erdmann in an accident. Continental, Kohls' insurance carrier, paid the judgment and commenced this action to recover the

amount of the judgment, costs, and legal fees expended in defending the action.

Continental maintains that Kohls was an additional insured under an occupational comprehensive liability and comprehensive automobile damage insurance policy issued to L.C.L. by Carriers.

It therefore becomes necessary to review the facts which resulted in the judgment in favor of Erdmann, an employee of L.C.L., against Kohls.

On December 13, 1961, Henry Erdmann was delivering quantities of beef to a Kohls store in Milwaukee county when he fell from a ramp which was placed between the semitrailer and the unloading dock. The ramp was supplied by Kohls Food Stores. It was set in position by Erdmann and Wieland. Wieland was also employed by L.C.L. The ramp spanned the distance from the truck to the floor of the cooler. The unloading consisted of removing a quarter of beef from a hook inside the L.C.L. truck and carrying it down the ramp into the cooler. The quarters weighed from 175 to 200 pounds. Just prior to the accident, Erdmann removed a quarter of beef from a hook inside the L.C.L. truck, and while stepping on the ramp with the quarter of beef, Erdmann lost his footing and fell to the alley suffering injury to his right knee.

The case was tried to a jury in the circuit court for Milwaukee county. The jury found Kohls 75 percent negligent at the time and place of the accident with respect to maintaining its unloading facilities as free from danger as the nature of the premises reasonably permitted. Erdmann was found 25 percent negligent with respect to the manner in which he unloaded the truck.

In the instant proceeding Continental acknowledges that Kohls was causally negligent with respect to maintaining its unloading facilities as free from danger as

the nature of the premises reasonably permitted. There are no material issues of fact which are in dispute.

The policy issued by Carriers to L.C.L. does not contain a specific provision extending coverage to loading and unloading of the vehicle.

## *Issue.*

Under the facts of this case, we judge the dispositive issue to be whether Kohls was a participant in the unloading of the vehicle so as to constitute either use or operation thereof within the provisions of Carriers' insurance contract.

As relates to this case, Carriers undertook to indemnify L.C.L. in the following manner and under the following terms:

"I                    Coverage Clauses

"(1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay, including contractual obligations, for damages which arise out of the occupation of the named insured as stated in the Declarations, as a result of personal injury, bodily injury, sickness, disease or death to persons and for loss of or damage to property of others."

It is the position of Continental that Kohls was participating in the unloading operation or was responsible for the use of the truck when Erdmann was injured, and therefore Kohls is an additional or omnibus insured under Carriers' insurance contract.

The trial court concluded that Kohls was not "actually participating" in unloading the truck. It further determined that the furnishing of what the jury found to be defective unloading facilities, in violation of the safeplace statute, was no part of the act of unloading and

did not constitute either "use" or "operation" of the truck by Kohls. We agree with this determination.

Kohls' negligence consisted of providing defective unloading facilities; however, that act alone is not sufficient to make them an active participant in the unloading operation.

The court, in *Amery Motor Co. v. Corey* (1970), 46 Wis. 2d 291, 297, 298, 174 N. W. 2d 540, stated:

"We think it is important for coverage that the negligence occur not only during the loading and unloading operation but that it be a part of that operation. . . ."

Wisconsin and the majority of other jurisdictions hold that not all acts of participation make the actor an active participant or the act itself a part of the operation of unloading or loading for the purpose of coverage under motor vehicle liability insurance. Generally the word "participate" is modified by the words "actively" or "actually." In citing *Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis. 2d 335, 168 N. W. 2d 581, the court in *Amery, supra,* page 297, held:

". . . *Persons actively engaged in loading* and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile and are covered by the loading and unloading provision of the policy. In *Lukaszewicz* the loading and unloading coverage of the truck was extended to the employee of the owner of the premises on which the truck was being unloaded because . . . the employee of the owner of the premises was *actually participating* in removing from the truck its load of concrete products and thus was using or operating the truck." (Emphasis supplied.)

In *Lukaszewicz, supra,* the loading and unloading coverage of the truck was extended to the employee of the owner of the premises because he was using a forklift to remove concrete products from the truck.

In *Komorowski v. Kozicki* (1969), 45 Wis. 2d 95, 105, 106, 172 N. W. 2d 329, coverage was extended to the ". . . 'actual acts' of loading (placing lumber onto the truck) and unloading (placing lumber onto the ground) . . . ."

Other authorities hold that the mere furnishing of the premises on which the truck is to unload is not causally connected enough to the operation of unloading or loading so as to be covered by the liability insurance on the truck. Where the injury is caused by defective docking facilities or unsafe premises, the courts have not considered such a part of the unloading or loading operation. *See:* 92–100 A. L. R. 2d (Later Case Service) supplementing 95 A. L. R. 2d 1129, sec. 4 (1972 pocket part, page 81).

There is some conflict on this point among other courts of other jurisdictions. However, the result favored by the majority of jurisdictions is that automobile liability insurance even under a specific loading and unloading clause should not cover damages sustained as a result of negligent maintenance of the premises where the loading or unloading is carried out. *See: Cosmopolitan Mut. Ins. Co. v. Baltimore & Ohio R. R. Co.* (1963), 18 App. Div. 2d 460, 240 N. Y. Supp. 2d 88; *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N. E. 2d 191; *Atlantic Mut. Ins. Co. v. Richards* (1968), 100 N. J. Super. 180, 241 Atl. 2d 468.

However, this court has adopted the majority view. In *Amery,* the truck driver arrived at the bulk plant with his truck and parked it at the curb of the street in front of the plant and used the key to unlock the pipes to the bulk tanks. The hose from the truck was then coupled with a pipe and the fuel was pumped from the truck to the tanks. An explosion and fire followed due to a defect in the receiving tanks. The owner of the premises claimed he was an additional insured under

the truck's liability insurance. This court, on page 299, held:

". . . The only apparent participation of the owner-lessees was the furnishing of the key, the placement of the connecting pipes at the curbside and the furnishing of the tanks and the premises. Furnishing the key did not make Houle the agent of the owner-lessees or a loaned employee. He was about his master's business of delivering gasoline. The furnishing of the defective tanks and storage equipment on the premises was no part of the act of unloading and thus using the truck. . . ."

In *Amery,* page 301, the court went further and stated:

"While loading and unloading coverage added to an automobile liability policy is comparatively recent, it has been the source of much litigation. Annot. (1957), 51 A. L. R. 2d 924. It was not intended to take the place of comprehensive insurance on the premises. *See* Suter, *Loading and Unloading,* 31 Insurance Counsel Journal 112 (Jan. 1964). . . ."

The court also said at pages 301, 302:

"In *General Accident Fire & Life Assurance Corp. v. Brown* (1962), 35 Ill. App. 2d 43, 181 N. E. 2d 191, a workman was injured in a fall from a loading platform due to its defective condition arising from negligent maintenance. The court held no coverage under the omnibus and the unloading clause on the ground there was no causal connection between the use of the truck and the injury. The result of this case is consistent with this court's view of coverage because the relationship from the standpoint of causation did not amount to participation in the act of unloading."

In *Amery, supra,* page 302, we cited *Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc.* (8th Cir. 1966), 366 Fed. 2d 555, as being squarely in point. This court stated:

"The court . . . distinguished the cases in which the owner of the premises was considered an insured from those in which he was not on the basis that in the former cases an employee of the party to whom the goods were being delivered was actually engaged in the unloading of the vehicle . . . while in the cases of a defective premises the owner was not engaged in the unloading operation merely by furnishing the premises."

In the instant case no employee was present or involved with the unloading. No employee of Kohls used the ramp, much less the truck. It cannot be said that Kohls actively engaged in the unloading operation or the use of the truck simply because they furnished the unloading ramp.

Therefore, since we determine, as did the trial court, that Kohls was not a participant in the unloading operation or legally involved in the use or operation of the truck, it becomes unnecessary to reach the other issues raised by the parties to this appeal.

*By the Court.*—Judgment affirmed.