**Walter BLACHOWSKI, Plaintiff,**

**v.**

**ROYAL INDEMNITY COMPANY, Defendant.**

**Civ. A. No. 72-C-101.**

United States District Court, E. D. Wisconsin.

April 16, 1975.

Howard A. Davis and James J. Murphy, Milwaukee, Wis., for plaintiff.

Richard S. Gibbs, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is a diversity action involving the scope of insurance coverage under a loading and unloading clause in an automobile liability policy. The parties have stipulated to the facts and, after a hearing on March 24, 1975, agreed that the action could be decided on cross motions for summary judgment. For the reasons hereinafter stated, summary judgment for the plaintiff must be granted.

### I.

On August 30, 1965, Lloyd Construction Company, Inc. ("L.C.C.") was engaged in the construction of the Juneau Village Project apartments in Milwaukee, Wisconsin. Pursuant to a contract, State Sand and Gravel Company ("State") was delivering ready-mix concrete to the construction site. The work had progressed to the extent that the concrete truck could not pour the concrete directly into the wooden forms but rather poured the concrete into a bucket which was then hoisted up by means of a crane and swung to the section of the job where the bucket could then be emptied into the forms. The operator of the crane could not see the spot at which the concrete was dropped into the forms and was, accordingly, directed by a signalman. At the point where the concrete was emptied from the bucket, a group of concrete "puddlers," among them one George Kropelin, would push the concrete into the forms. Other workmen were working in the area, and it was the regular and ordinary custom of the trade for those working with the concrete to warn the other workmen of the approach of the bucket. The signalman did not have this responsibility but instead watched the bucket itself and gave hand signals to the crane operator.

Plaintiff Walter Blachowski was working as a carpenter near where the concrete was being poured into forms. He was holding onto a two-by-four when the concrete bucket came down on his right hand and crushed it. Although George Kropelin and other puddlers had given Blachowski a warning of the concrete bucket's approach several times earlier in the day, neither Kropelin nor anyone else warned Blachowski of the bucket's approach just before it crushed his hand. Kropelin admittedly did see the bucket coming.

The crane and bucket were owned by L.C.C., and the crane operator, signalman, puddlers, and carpenters were all L.C.C. employees.

At the time of the injury, State was the named insured under a comprehensive automobile liability policy issued by defendant Royal Indemnity Company ("Royal"). The policy promised:

> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * sustained by any person, caused by accident and arising out of the * * * use of any automobile." (¶ I. Coverage A)

> " * * * Use of an automobile includes the loading and unloading thereof." (¶ IV(c))

"Insured" was defined to include not only the named insured, State, but also " * * * any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission * * *."

The policy also had an endorsement which read as follows:

> "LIMITATION OF ADDITIONAL INTERESTS—LOADING AND UNLOADING

> "It is agreed that the insurance for Bodily Injury Liability and Property

Damage Liability does not apply to injury, sickness, disease, death or destruction which arises out of the loading or unloading of an automobile, provided that this limitation does not apply with respect tò claims made or suits brought against the following insureds:

"(a) the named insured or, if the named insured is an individual, his spouse, if a resident of the same household;

"(b) a lessee or borrower of the automobile or an employee of either of them or of the named insured;

"(c) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) or (b) above.

"This endorsement is subject to all terms, conditions and exclusions of the policy which are not inconsistent herewith."

Plaintiff Blachowski commenced an action against State and George Kropelin in the Circuit Court of Milwaukee County for the injury to his hand. Before trial, plaintiff moved for a voluntary nonsuit as to State, and the court dismissed State without prejudice. The trial commenced with George Kropelin as the only defendant. Kropelin was not represented by an attorney. The attorney for Royal had been asked by the state court judge whether he wished to appear in Kropelin's defense, and he had advised the court that his client did not wish him to do so. This was done in spite of the fact that plaintiff's theory in the state court action, reiterated in his trial brief, was that Kropelin was an additional insured under the above-quoted provisions of the insurance policy and that Royal would, therefore, be obligated to pay any·amount for which Kropelin was found to be liable.

At the close of the state court trial, the case was submitted to the jury solely ón the premise that Kropelin had negligently failed to warn of the approach of the concrete bucket. The jury returned a verdict finding Kropelin 95% causally negligent, plaintiff Blachowski 5% contributorily negligent, and the total damages to be $131,500. Judgment was entered on July 16, 1971, for $125.-566.95.

Thereafter plaintiff commenced this action, claiming that since Kropelin was an additional insured under the insurance policy, Royal was liable to pay the amount of the judgment rendered against Kropelin in the state court action, together with interest. Defendant's answer denied coverage and raised a number of affirmative defenses. Defendant has, however, now conceded that the only issue is whether coverage under the policy extended to Kropelin's activities. To decide this, two issues must be resolved: First, did the injury to plaintiff arise out of the unloading of the State concrete truck, and, secondly, was Kropelin an additional insured under the policy?

II.

The question of whether an injury arose out of the loading or unloading of an automobile has been the subject of much litigation. See Annots., 160 A.L.R. 1259; 95 A.L.R.2d 1122. In interpreting loading and unloading clauses, courts have developed two doctrines, the older and narrower "coming to rest" doctrine, and the broader "complete operation" doctrine. The doctrines are described as follows:

"Under the 'coming to rest' doctrine, unloading within the meaning of the unloading clause comprises only the actual removing or lifting of the article from the motor vehicle up to the moment when the goods which are taken off the motor vehicle actually come to rest and every connection of the motor ·vehicle with the process of unloading ceases. Under the so-called 'complete operation' doctrine, however, the 'loading and unloading' clause covers the entire process involved in the movement of goods from the moment when they are given into the insured's possession until they are

turned over at the place of destination to the party to whom delivery is to be made, and for all practical purposes, any distinction between 'unloading' and 'delivery,' and between 'loading' and 'preparation actions,' is not considered." 95 A.L.R.2d at 1125.

In this action, the court is bound by Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply Wisconsin law. Although in Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629 (1937), the "coming to rest" doctrine was apparently applied, some thirty-two years later in Komorowski v. Kozicki, 45 Wis.2d 95, 172 N.W.2d 329 (1969), the Wisconsin Supreme Court expressly adopted the "complete operation" doctrine.

While neither the parties' nor the court's research has discovered a case involving the precise facts which are the basis for this action, a number of courts have ruled on the question of coverage under a loading and unloading clause where accidents occur during the process of delivering ready-mix concrete by use of a truck, bucket, and crane to the place where the concrete will be poured into prepared forms. Even applying the "complete operation" doctrine, however, the courts are divided over when the process of unloading has been completed.

Several cases have held that unloading is not completed until the concrete, after being poured into the bucket, is transported by the crane to its ultimate destination—the forms. St. Paul Mercury Ins. Co. v. Huitt, 336 F.2d 37 (6th Cir. 1964); Travelers Ins. Co. v. W. F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495, affirmed, 13 N.Y.2d 1019, 245 N.Y.S.2d 597, 195 N.E.2d 308 (1963); Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962); Commercial Standard Ins. Co. v. American General Ins. Co., 455 S.W.2d 714 (Tex.1970); Travelers Ins. Co. v. Employers Casualty Co., 380 S.W.2d 610 (Tex.1964). See also, Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952). These cases reason that because it is impractical to leave ready-mixed concrete sitting for any length of time, the bucket and crane are merely a conduit for the concrete and the trip to the forms an incident in the unloading operation. Travelers Ins. Co. v. W. F. Saunders & Sons, Inc., supra; Lamberti v. Anaco Equipment Corp., supra. "Delivery" is thus not concerned with legal transfer of title, possession, or risk of loss, but instead refers to the physical placing of the articles being delivered. Travelers Ins. Co. v. Employers Casualty Co., supra.

In another group of cases, several courts have held that unloading is completed when the concrete has been poured from the truck into the bucket. Liberty Mutual Ins. Co. v. Johnson, Drake & Piper, Inc., 390 F.2d 410 (8th Cir. 1968); Fireman's Fund Ins. Co. v. New Zealand Ins. Co., 103 Ariz. 260, 439 P.2d 1020 (1968); Entz v. Fidelity & Casualty Co., 64 Cal.2d 379, 50 Cal.Rptr. 190, 412 P.2d 382 (1966); San Fernando Valley Crane Service, Inc. v. Travelers Ins. Co., 229 Cal.App.2d 229, 40 Cal. Rptr. 165 (1964); General Accident Fire and Life Assur. Corp. v. Liberty Mutual Ins. Co., 260 So.2d 249 (Fla.App. 1972); United States Fidelity & Guaranty Co. v. Backus, 243 Md. 121, 220 A.2d 139 (1966); United States Fidelity & Guaranty Co. v. Hartford Accident & Indemnity Co., 209 Va. 552, 165 S.E. 2d 404 (1969). See also, Pavlik v. St. Paul Mercury Ins. Co., 291 F.2d 124 (7th Cir. 1961). The primary rationale of these cases is that delivery of the concrete is complete when possession is transferred to the consignee and the truck driver has no further control over its handling. Additionally, some of these cases have noted the absence of a causal relationship between the truck and the injury which eventually occurred.

In Zimmer v. Daun, 40 Wis.2d 627, 162 N.W.2d 626 (1968), the Wisconsin court was presented with this issue but did not decide it. There as here, a truck delivered ready-mixed concrete to a construction site where it was emptied

into a bucket which was in turn hoisted by a crane to the area where the concrete would be poured into forms. The plaintiff there was struck by the bucket and injured. He sued the crane operator and signalman who were fellow employees, and also sued Fidelity & Casualty Company of New York which had issued an automobile liability policy to the owner of the truck which extended coverage to loading and unloading. Fidelity moved for summary judgment on the proposition that, as a matter of law, the signalman and crane operator were not additional insureds under the policy because they were not engaged in unloading the truck at the time of the accident. The motion was denied without assigning any reasons, and Fidelity appealed.

The Wisconsin Supreme Court affirmed, stating that it did not believe the lower court had considered the interpretation of the loading and unloading provisions of the policy but had only decided that it wished to hear testimony at a trial rather than determine the issue on affidavits. The Court did note, however, that the question was an interesting and important one upon which the cases in other jurisdictions did not present a unanimous answer.

█ The Court's duty is to decide which of these disparate lines of cases the Wisconsin Supreme Court would adopt were it to be presented with the issue. The delicacy of this decision is enhanced by the fact that there is no appeal from this court to the Wisconsin courts and by the absence of any Wisconsin statute allowing a question to be certified to the Wisconsin Supreme Court. Nevertheless, abstention would not be justified since the case has been pending in this court for some time, no action is pending in state court, and much of the court's scarce time has already been expended. See, Hart and Wechsler's, The Federal Courts and The Federal System, at 998–1009 (2d ed. 1973).

In Stammer v. Kitzmiller, 226 Wis. 348, 352–353, 276 N.W. 629, 631 (1937), the Court enunciated the following rule:

" * * * When the goods have been taken off the automobile and have actually come to rest, when the automobile itself is no longer connected with the process of unloading, and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use. The precise line at which the unloading of the automobile ends and a further phase of commerce such as the completion of delivery begins after unloading may in some cases be difficult of ascertainment. * * * "

As indicated above, in Komorowski v. Kozicki, 45 Wis.2d 95, 102, 172 N.W.2d 329, 332 (1969), the Court abandoned this rule and expressly adopted the "complete operation" doctrine, describing the difference as follows:

"In reference to unloading, the 'complete operation' doctrine, unlike the 'coming to rest' doctrine, would apply where an item had already been removed from the vehicle and was being further transported to its final resting place. * * * "

The *Komorowski* court also quoted with approval the following statement from the earlier case of Ermis v. Federal Windows Mfg. Co., 7 Wis.2d 549, 97 N.W.2d 485 (1959):

" 'The words "including the loading and unloading thereof" are an extension of the use clause and cover operations or acts in which the movement of the truck itself does not play a part. * * * ' " Supra, 45 Wis.2d at 104, 172 N.W.2d at 333.

*Ermis* itself sheds further light on the position of the Wisconsin court. There a truck driver had gone to a manufacturing company to procure a load of scrap metal and was injured when part of an overhead crane, operated by an

employee of the manufacturing company, dropped upon his hand. In reversing the lower court's judgment dismissing a cross-complaint against the automobile insurer, the court thereby indicated that there could be no coverage under the loading and unloading clause.

In Amery Motor Co. v. Corey, 46 Wis. 2d 291, 298, 174 N.W.2d 540, 543 (1970), while discussing the scope of coverage under a loading and unloading clause, the Court stated:

> " * * * In Komorowski v. Kozicki (1969), 45 Wis.2d 95, 172 N.W.2d 329, we enlarged the concept of loading and unloading and adopted the 'complete operation' doctrine which is generally understood to mean not only the direct and continuous transfer of the goods to and from a vehicle to or from the loading dock or other adjacent place but the complete operation of the pick-up of the goods from the premises to the delivery to the premises of the consignee. This is a more realistic concept of loading and unloading as understood in the business world. See Annot. (1964), 95 A.L.R.2d 1122. In Stammer v. Kitzmiller (1937), 226 Wis. 348, 276 N.W. 629, which is now overruled, we took the narrower 'coming-to-rest' view that loading meant only the immediate act of placing goods upon the vehicle and excluding any preliminary act of bringing the goods to the vehicle and unloading embraced only removing the goods from the vehicle to the first place of rest even though that was alongside of the truck on the sidewalk."

The *Amery* court also indicated that there was no necessity for a causal relationship between the truck and the injury for coverage to exist:

> "Neither concept of loading or unloading in respect to coverage is concerned with causation but rather with the nature of the acts. Causation has to do with liability of the person covered. * * *" Supra, 46 Wis.2d at 298, 174 N.W.2d at 543.

The Wisconsin case law is such that it is more likely that the broader view of the "complete operation" doctrine, typified by cases such as Lamberti v. Anaco Equipment Corp., 16 A.D.2d 121, 226 N.Y.S.2d 70 (1962), would be followed by the Wisconsin court. None of the Wisconsin cases indicate that transfer of possession and control is even a factor, much less determinative, in deciding whether unloading has been completed. Instead, the Wisconsin rule is to focus on the nature of the activity. Amery Motor Co. v. Corey, supra. Transfer of possession under Wisconsin law can, therefore, be regarded as irrelevant, since the fact that the bucket and crane are owned by the consignee rather than the deliverer does not alter the nature of their use and operation.

■ Since Wisconsin law would not rely solely on transfer of possession and control as the index of whether unloading had been completed, this court is unable to follow the line of cases, e. g., Liberty Mutual Ins. Co. v. Johnson, Drake & Piper, Inc., 390 F.2d 410 (8th Cir. 1968), which adopt this rationale. The other line of cases holding that use of a bucket and crane is but a means of unloading the concrete truck and that accidents occurring during this process arise out of the unloading of the truck must, therefore, be followed. The injury to plaintiff, which occurred while the bucket was being swung over to the forms where the concrete would be deposited, must be held to have occurred as part of the unloading of the State concrete trucks. St. Paul Mercury Ins. Co. v. Huitt, 336 F.2d 37 (6th Cir. 1964); Travelers Ins. Co. v. W. F. Saunders & Sons, Inc., 18 A.D.2d 126, 238 N.Y.S.2d 495, affirmed, 13 N.Y.2d 1019, 245 N.Y. S.2d 597, 195 N.E.2d 308 (1963); Lamberti v. Anaco Equipment Corp., supra; Commercial Standard Ins. Co. v. American General Ins. Co., 455 S.W.2d 714 (Tex.1970); Travelers Ins. Co. v. Employers Casualty Co., 380 S.W.2d 610 (Tex.1964). See also, Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952).

### III.

Since it has been determined that the injury to plaintiff arose out of the unloading of State's concrete truck, the only remaining issue is whether George Kropelin was an additional insured under the policy issued by Royal. As set out above, the policy had an endorsement which limited coverage for injuries arising out of loading and unloading to the extent that if the endorsement is valid, then George Kropelin cannot be considered an additional insured under the policy.

Plaintiff has contended and defendant conceded that the endorsement is invalid to the extent that it conflicts with the omnibus statute, § 204.30(3), Wis. Stats.,* as explicated in Lukaszewicz v. Concrete Research, Inc., 43 Wis.2d 335, 168 N.W.2d 581 (1969). There the court struck down a somewhat similar limitation on the coverage of a loading and unloading clause and held that under the omnibus statute, the coverage extended to any person "operating" the automobile "with the permission of the assured * * *." The Court stated:

"* * * Since the word 'operating' in the statute must be construed with the 'use' of the automobile for the purposes described in the policy and for which permission is granted by the named insured, 7 Appleman, Insurance Law & Practice, p. 139, sec. 4314; p. 155, sec. 4322; operating a truck for loading and unloading must mean more than driving the truck to the premises. One cannot drive a truck while it is being loaded or unloaded. We think the word 'operating' in the statute in connection with loading and unloading of an automobile means participating in the loading and unloading

activity." Supra, at 343–344, 168 N. W.2d at 586.

In Amery Motor Co. v. Corey, 46 Wis. 2d 291, 297, 174 N.W.2d 540, 543 (1970), the Court further refined its definition of "operating" as follows:

"* * * Persons actively engaged in loading and unloading the automobile in the commonly accepted meaning of those words are considered to be using or operating the automobile and are covered by the loading and unloading provision of the policy. * * * *"

See also Continental National Ins. Co. v. Carriers Ins. Co., 55 Wis.2d 533, 200 N.W.2d 584 (1972).

The question, therefore, resolves to whether George Kropelin was actively engaged in unloading the concrete truck. Defendant has stipulated to the fact that at the state court trial, there was testimony that the regular and ordinary custom of the trade was that the people working with the concrete, such as George Kropelin, were expected to warn other tradesmen of the approach of the concrete bucket and that the signalman who directed the crane operator could not warn anyone because he had to continually watch the concrete bucket itself. Defendant has not contested the proposition that having the concrete puddlers, such as Kropelin, warn other tradesmen of the concrete bucket's approach was a necessary part of conveying the concrete from the truck to the forms. Indeed, the conclusion seems inescapable that if the carpenters, such as plaintiff, were to work safely near where the bucket would pour concrete into forms, the puddlers would have to warn them of the bucket's approach. Since Kropelin's duty to warn others of the approach of the concrete bucket was integral to the unload-

---

* Section 204.30(3), Wis.Stats. (1971), reads in relevant part as follows:

"(3) *Coverage.* No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in the policy. Such indemnity shall also extend to any person legally responsible for the operation of such automobile. The insurance hereby afforded shall not apply unless the riding, use or operation is with the permission of the assured named in this policy * * *."

ing of the truck, he was "actively engaged in * * * unloading" the truck. Amery Motor Co. v. Corey, supra.

Defendant has not contended that the unloading of the truck was without State's permission. Permission to unload was implied since State sent the truck to the construction site for the express purpose of having it unloaded.

Since Kropelin was an additional insured under the policy, Royal is obligated to pay the amount of the judgment recovered against Kropelin in the state court action, together with interest.

It is therefore ordered that plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied.

It is further ordered that plaintiff's attorneys shall within twenty days from the filing date of this decision and order submit an order for judgment in accordance with this decision after first submitting it to defendant's attorney for approval as to form.