0700

Lester HITE, Appellant v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, Respondent.

(344 S. E. (2d) 173)

Court of Appeals

*Richard J. Breibart,* Lexington, *for appellant.*

*R. Davis Howser* and *W. Hugh McAngus, Richardson,* and *Plowden, Grier & Howser,* Columbia, *for respondent.*

Heard March 27, 1986.

Decided May 12, 1986.

SHAW, Judge:

Appellant Lester Hite initiated this action against respondent Hartford Accident and Indemnity Company seeking Eight Thousand ($8,000.00) Dollars in damages for Hartford's alleged breach of contract. Hite now appeals the trial court's directed verdict for Hartford. We affirm.

Because this court considers Judge Bristow's order a clear and thorough analysis of the issue on appeal, we adopt and publish his order, as modified and supplemented, as the view of this court. The modifications and supplements are reflected by either ellipses or bracketed material.

## ORDER OF JUDGE BRISTOW

.... The threshold question to be determined in this action seeking third party benefits under a contract of insurance is should [Hite] be construed as an "insured" under S. C. Code Sec. 56-9-810(2) (1976), the uninsured motorist law.

The parties have stipulated to the following facts. On March 27, 1981, [Hite] was an employee of Jim Rawls Ford Mercury, Inc. The employer gave permission and provided automobiles for [Hite's] use. The automobiles were insured by [Hartford], who provided for uninsured motorists' protection as required by South Carolina law. On March 27, 1981, [Hite] was struck by an automobile driven by William Martin. At that time [Hite] was not in, on, or touching a vehicle insured by [Hartford]. [Hartford] was served with notice of the lawsuit on May 3, 1982, and elected not to take part in it as long as the suit was defended by National Grange Mutual Insurance Company, insurer of the automobile driven by Martin. National Grange contended that it did not provide coverage on Martin as he did not have permission to operate the automobile. The insurance policy issued by [Hartford]

would provide uninsured motorist coverage to [Hite] if (1) Martin was operating an uninsured vehicle, and (2) [Hite] was occupying or using a covered automobile, and (3) [Hite] met and complied with all of the policy provisions, and (4) [Hite] did not violate any of the policy provisions. [Hite] was awarded a jury verdict against Martin of Fifteen Thousand ($15,000.00) Dollars on March 15, 1983.

[Hartford] was contacted by [Hite] as to the result of the trial and [Hartford], aware that National Grange alleged that Martin was not a permissive user, refused to pay the verdict on various grounds. [Hite] was cognizant of testimony that Martin lacked express permission to operate the car and ... released all claims against National Grange, William Martin, Ruth Holloway, or Cleveland Cyrus for Seven Thousand ($7,000.00) Dollars.

Several facts presented at trial are crucial to a determination of the threshold question in this case. [Hite] testified that on the evening of his injury he drove back from supper to the car dealership in an automobile provided by his employer. Leaving the car running, [Hite] got out of the car, approached the dealership on foot, and heard the night watchman yell to him that someone (Martin) had backed into a new truck. [Hite] walked fifty feet across the parking lot to tell Martin, who was sitting in a car, not to leave. Martin then accelerated the vehicle, and [Hite's] legs were run over by the left rear tire.

In determining whether [Hite] is covered under [Hartford's] policy, we must look first to the uninsured motorist law. S. C. Code Sec. 56-9-810(2) (1976) defines two classes of "insured." The first is a "named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise. ..." The parties have stipulated that [Hite] is not a named insured under [Hartford's] policy, nor is he a spouse or a relative or a resident of the household of any individual named in the policy. The second class of "insured" is "any person who *uses* with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above." [Emphasis added.] In *Davidson v. Eastern*

*Fire & Casualty Co. Ins. Co.*, 245 S. C. 472, 141 S. E. (2d) 135 (1965), the Supreme Court analyzed Sec. 56-9-810(2) by stating, "The members of the first class are covered 'while in a motor vehicle or otherwise,' i.e., at all times. The members of the second, viz.: the permissive user and the guest, are covered while using, or a guest in, the motor vehicle to which the policy applies . . ." It is clear that [Hite], claiming uninsured motorist benefits from a vehicle of which he was a permissive user, must prove that he sustained his injuries while "using" the motor vehicle.

. . . It has been held that the "use" of an automobile involves its employment for some purpose of the user, while its "operation" involves the user's direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. *Metcalf v. Hartford Acc. & Indem. Co.*, 176 Neb. 468, 126 N.W. (2d) 471, 474 (1964). One who operates a motor vehicle obviously uses it, but one can use a motor vehicle without operating it; an automobile is being used, for example, by one riding in it, although another is driving or operating it. *Orrill v. Garrett*, 100 Ill. App. (2d) 194, 241 N.E. (2d) 1, 3 (1968).

Although "use" is unquestionably a broader term than "operate" of "drive," the difficult determination is whether this situation of an injury sustained remote to the actual operation of the vehicle is encompassed by the term "use."

[Hite] cites the case of [*Federated Mutual Implement & Hardware Ins. Co. v. Gupton*, 357 F. (2d) 155 (4th Cir. 1966),] as an interpretation of the word "use" broad enough to encompass [his] actions. . . . The insured vehicle in *Federated* was being used at the time of the accident by being unloaded, and the vehicle was involved in the actual injury. Neither of these facts is present in the instant case.

In *Wrenn & Outlaw, Inc. v. Employees Liability Assurance Corp.*, 246 S. C. 97, 142 S. E. (2d) 741 (1965), the Supreme Court held that where a bag boy at a supermarket placed groceries in the customer's automobile and closed the car door on the customer's hand, this was a "use" of the automobile with the customer's permission. As in *Federated*, the vehicle was being used in loading and was involved in the actual injury. . . . Our Supreme Court emphasized in *Wrenn* that the loading and injury constituted one continuous oper-

ation without interruption, highlighting the importance of the loading activity to the finding of a use. No loading took place in the instant case.

In *Coletrain v. Coletrain*, 238 S. C. 555, 121 S. E. (2d) 89 (1961), the court held that a husband who closed the door on his wife's hand as she was leaving a taxicab was using the taxicab, although they were both passengers exiting from the cab. The court noted that the complaint stated that the injury was the result of negligent unloading, and reasoned that in order to put the taxicab to the use that was intended, it was required that the doors be opened and closed. This was done negligently by the defendant husband. Once again, the "use" enunciated by the court involved loading and unloading of the insured vehicle, and the vehicle was also involved in producing the actual injury.

... [Hite] emphasizes that the insured automobile was left running and remained operable when he was injured by the vehicle driven by Martin. It has been held that the injury of a pedestrian who was struck by an automobile while pushing his disabled car off the street at the direction of a police officer did not arise from the "operation, maintenance, or use" of the police car, even though the police car's lights were flashing while it was parked at the side of the road. *Hartford Acc. & Indem. Co. v. Wilson*, Fla. App., 356 So. (2d) 24 (1978). Two cases involving police officers aid in delineating the borders of "use." The first, cited by [Hartford] involved an officer who parked his insured cruiser, walked 164 feet to serve a warrant, and was struck and killed by an uninsured mortorist. *Insurance Co. of North America v. Perry*, 204 Va. 833, 134 S. E. (2d) 418 (1964). In the second case a patrolman stopped a motorist for a traffic violation and was stabbed seven times removing a bottle from under the driver's seat. *Tomlin v. State Farm Mut. Auto. Liability Ins. Co.*, 95 Wis. (2d) 215, 290 N.W. (2d) 285 (1980). In both cases the courts ruled that the causes of the injuries were not "uses" of the motor vehicles.

What appears to be crucial to many courts in determining whether an injury produced by another vehicle or person falls within the ambit of "use" is the existence of a casual connection between an accident or injury and the use of the vehicle. *Chicago Ins. Co. v. Security Ins. Co.*, 111 N. J. Super

291, 268 A (2d) 296 (1970). It has been held that the existence of a casual connection obviates the necessity of finding that the injury was directly and proximately caused by the use of the vehicle, *Insurance Co. v. Royal Indem. Co.*, 429 F. (2d) 1014 ([6th Cir.] 1970), and affords coverage for injuries bearing almost any causal relation with the insured vehicle, *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. (3d) 94 [109 Cal. Rptr. 811] 514 P (2d) 123 (1973). The injury must, however, be foreseeably identifiable with normal use, maintenance, and ownership of the vehicle. *Kangas v. Aetna Casualty & Surety Co.*, 64 Mich. App. 1, 235 N.W. (2d) 42 (1975). If the injury was directly caused by some independent or intervening cause wholly disassociated from, independent of or remote from the use of the automobile, the injury cannot be said to arise out of its "use." *Worthington v. State*, Wyo., 598 P (2d) 796, 807 (1979). Even if there is some remote connection between the use of the automobile and the injury complained of, if the injury is directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile, the injury is not the result of the "use" of an automobile. *Norgaard v. Nodak Mut. Ins. Co.*, N.D., 201 N.W. (2d) 871, 875 (1972). . . .

In the instant case [Hite] left the insured automobile, walked toward the dealership, and answered the call of the night watchman by walking fifty feet to tell Martin not to leave after he had backed into a truck. [Hite's] injury was directly caused by Martin, and this was an independent or intervening cause wholly disassociated from, independent of, and remote from the use of the insured automobile. It cannot be said that being struck fifty feet from the insured automobile by another vehicle while answering a call for assistance of the night watchman is foreseeably identifiable with normal use, maintenance and ownership of the vehicle. It is difficult to see where use of the insured automobile was directly connected with or a cause of the ensuing accident.

In this case there was no loading or unloading of the insured automobile, or even an involvement of the vehicle in the production of the injury, that would put the fact situation within the parameters of "use" as defined in South Carolina. Other jurisdictions have decided cases similar in

fact to the one presented here, and the key to determining whether injuries remote to the operation of an automobile occur during a "use" of the vehicle is the existence of a causal connection between the injury and the use. Such a causal connection has not been established in this case, where the injuries are the direct result of an intervening cause. I therefore grant the motion for a directed verdict by [Hartford].

In granting [Hartford's] motion for a directed verdict I need no longer address the issues of whether Martin was uninsured or whether [Hite] complied with the provisions of the policy. . . .

Affirmed.

CURETON and GOOLSBY, JJ., concur.