984 F.2d 610
 STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellant,
v.
Joseph Wilburn PINSON; Nationwide Mutual Insurance Company,
Defendants-Appellees,
and
Donald Charles Rider; Ashley Graham Rider; South Carolina
Insurance Company, Defendants (Two Cases).
 Nos. 92-1275, 92-1401.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 28, 1992.
Decided Jan. 22, 1993.
 
 Bradford Neal Martin, Leatherwood, Walker, Todd & Mann, Greenville, SC, argued (Bernard F. Hawkins, on brief), for plaintiff-appellant.
 Sharon McCain Rickborn, Columbia, SC, John Bagnel Duggan, Duggan, Reese & McKinney, P.A., Greer, SC, argued, for defendants-appellees.
 Before ERVIN, Chief Judge, HALL, Circuit Judge, and DOUMAR, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 State Farm Fire and Casualty Company appeals the district court's grant of summary judgment for State Farm's insured in this declaratory action. We must decide whether a boatowner's liability insurance policy covers injuries caused by a collision between a vehicle and a boat being towed by another vehicle. Finding that coverage exists, we affirm the district court's grant of summary judgment against State Farm.
 
 I.
 
 2
 On June 17, 1990, Donald Rider was towing his pontoon boat behind his pickup truck in Waterloo, South Carolina. Because vandals had removed the stop sign at the intersection of highways 54 and 6, Rider entered the intersection without stopping. Rider's truck and boat were struck by a vehicle driven by Joseph Pinson. Pinson was seriously injured.
 
 
 3
 Rider's truck was insured by South Carolina Insurance Company; his boat by State Farm. Rider's State Farm Boatowners Liability Policy ("Policy") stated:
 
 COVERAGE L--WATERCRAFT LIABILITY
 
 4
 If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage resulting from the ownership, maintenance or use of your watercraft, we will:
 
 
 5
 1. [Pay the policy limits] for the damage for which the insured is legally liable; and
 
 
 6
 2. [Provide a defense.]
 
 
 7
 State Farm filed this action seeking a declaratory judgment that the Policy did not cover Pinson's injuries. Pinson and his underinsurance carrier, Nationwide Mutual Insurance Company, moved for summary judgment, arguing that Pinson's injuries arose in part from the boat's "use" or "ownership" or both.
 
 
 8
 The district court ruled that the boat was in "use," and that there was a causal connection between the boat's use and Pinson's injuries. Accordingly, the court granted the motion for summary judgment. State Farm filed this appeal.
 
 II.
 
 9
 Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. This Court reviews the district court's ruling de novo. United States v. Lee, 943 F.2d 366, 368 (4th Cir.1991).
 
 
 10
 The issue is whether the district court properly determined that coverage was provided under the "use" clause of Rider's Policy.[1] To resolve this issue, we must make two[2] separate inquiries: (a) whether the boat was in "use" within the meaning of the Policy's language, and (b) whether Pinson's injuries "resulted from" the boat's "use." Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106, 108 (S.C.1992). Because this is a diversity case, we apply South Carolina's substantive law. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 11
 A. Was Rider's boat in "use?"
 
 
 12
 As a threshold matter, we must determine whether a towed boat is in "use." For the following reasons, we find that it is.
 
 
 13
 First and foremost, this Court has already held that a towed vehicle is a "used" vehicle. American Fire & Casualty Co. v. Allstate Ins. Co., 214 F.2d 523 (4th Cir.1954) (applying South Carolina law to identical policy language); see also Bray v. Ins. Co. of State of Pennsylvania, 917 F.2d 130, 133 (4th Cir.1990) (applying Virginia law, cites American Fire with approval); see generally cases collected in Annotation, Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 89 A.L.R.2d 150 § 9(f) (1963 & Supp.). Although these cases address towed automobiles rather than boats, the policy language is identical, and, therefore, the analysis is the same. Arguably a towed boat presents a stronger case for coverage than a towed vehicle. Usually, a vehicle is towed only when its owner is unable to put it to its intended purpose. A boat, on the other hand, must be towed in order for a landlocked owner to derive any enjoyment from boat ownership.
 
 
 14
 Second, we find State Farm's principal argument--that South Carolina law "clearly mandates a narrow interpretation of the term 'use' in an insurance contract"--unpersuasive. Significantly, the principal case upon which State Farm's argument is based, Wausau Underwriters Ins. Co. v. Howser, 727 F.Supp. 999 (D.S.C.1990), was reversed by this court in Wausau Underwriters Ins. Co. v. Howser, 978 F.2d 1257 (4th Cir.1992) (conforming to certified questions answered in Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106 (S.C.1992)), after State Farm's brief was filed.
 
 
 15
 In South Carolina, the term "use" has been broadly, not narrowly, construed. For example, in Hite v. Hartford Acc. & Indem. Co., 288 S.C. 616, 344 S.E.2d 173, 175 (1986), the court stated that the concept of "use" was broader than the "operation" of a motor vehicle. The South Carolina Supreme Court has frequently cited with approval cases from other jurisdictions defining the concept of use very broadly. See Howser, 422 S.E.2d at 107; Coletrain v. Coletrain, 238 S.C. 555, 121 S.E.2d 89 (1961). One case cited approvingly in both Coletrain and Howser is Fidelity & Casualty Co. of N.Y. v. Lott, 273 F.2d 500 (5th Cir.1960). In Fidelity, the driver of the insured vehicle was using its roof as a gun rest to shoot a deer when, "[f]or some unexplained reason, ... the bullet tore through the top of the car, was deflected downward and inflicted the fatal injuries [to the passenger]." Id. at 501. The Fifth Circuit found that using the car as a gun rest was within the liability policy. The court explained that the policy language was "not restricted to occasions when the insured party was hurt either because of the running of the automobile or because of its standing after normal use." Id. at 502. Certainly, resting a gun on a car is a more obscure "use" of a vehicle than the commonplace occurrence in this case.
 
 
 16
 Contrary to the dissent's statements that our decision is "driven by a desire to create coverage," Dissent Op. at p. 617, we feel that the parties to the contract intended a towed boat to be in "use." In determining the scope of Rider's coverage, it is critical to consider the Policy's subject matter. Obviously, there is a significant distinction between boats, vehicles, and the dissent's travelling tubs and water heaters. Dissent Op. at p. 616. A water heater is taken to the consumer's home when purchased and left there, even if the original purchaser moves, until it is disposed of. On the other hand, unless a boat is permanently moored, it must be frequently transported to-and-from the water to be put to its intended purpose.
 
 
 17
 Because many boats are not permanently moored, an insurance company writing a boatowner's liability policy knows that landlocked policyholders will frequently tow their boats. This is clearly distinguishable from the dissent's strained analogies to transported water heaters under a general homeowner's liability policy. This is a complex and lengthy policy. If State Farm had wanted to exclude towing from the boat's liability coverage, it could easily have done so.
 
 
 18
 Therefore, we disagree with the dissent's conclusion that South Carolina would follow the smattering of courts that have ruled that a towed boat is cargo and is not in "use." See Hannah v. Erie Ins. Exchange, 537 A.2d 182 (Del.1987); State Farm Fire & Casualty Co. v. Thomas, 1986 WL 9001 (Tenn.App.); but see State Farm Fire & Casualty Co. v. Erwin, 393 So.2d 996 (Ala.1981) (towing a boat in order to have it repaired was within the "maintenance" clause of the boat's policy). The term "cargo" is defined as a "load (i.e. freight) of a vessel, train, truck, airplane or other carrier." Black's Law Dictionary (5th ed. 1979). The term "freight" means "goods transported by ... carriers." Id. Clearly, the term cargo has a strong commercial connotation. To find that a boat being towed by an individual boatowner becomes cargo would restrict this Policy far beyond the parties' intent. We also note a difference between the method used to transport Rider's boat and the transportation of "cargo." We are not faced with a situation where a tractor trailer was involved in a collision--Rider's trailer was nothing more than a flimsy rack with wheels on it.
 
 
 19
 For the aforementioned reasons we believe that South Carolina would continue to construe "use" broadly and find that a towed boat is in "use."
 
 
 20
 B. Whether Pinson's injuries "resulted from" the boat's use.
 
 
 21
 In response to this Court's recent certification of an analogous issue of state law, the South Carolina Supreme Court enunciated the test for determining whether an injury "arises" out of a vehicle's "use." See Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106 (S.C.1992).[3] We think the same causal test would be applied to the slight variation of policy language presented in this case: whether the injuries "result from" the boat's use.
 
 
 22
 In Wausau, the insured driver was pursued by an unknown assailant driving another car. During the chase, the insured driver's car was bumped several times before the insured was shot by the other driver. In resolving whether the assailant's vehicle was in "use" within the meaning of the insured's uninsured motorist coverage, the South Carolina Supreme Court stated that the test was "something less than proximate cause and something more than the vehicle being the mere site of the injury" or, more simply, whether "the use of the vehicle causally contributed to the claimant's injuries." Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d at 108, relying on Continental Western Ins. Co. v. Klug, 415 N.W.2d 876 (Minn.1987). Applying this test, the South Carolina Supreme Court determined that the uninsured vehicle's "use" causally contributed to the claimant's injuries.
 
 
 23
 In this case, there is no question that the towing of the boat causally contributed to Pinson's injuries. As the district court noted, the causal connection is particularly strong because Pinson actually struck the boat, as well as Rider's truck, during the accident.[4] In sum, the causal link in this case is much stronger than Wausau; Pinson's injuries "resulted" from Rider's "use" of his boat.
 
 III.
 
 24
 For the aforementioned reasons, the district court's judgment is affirmed.
 
 
 25
 AFFIRMED.
 
 DOUMAR, District Judge, dissenting:
 
 26
 I respectfully dissent and restate the facts. State Farm Fire and Casualty Company ("State Farm") appeals from the district court's order granting summary judgment against State Farm in a declaratory judgment action. State Farm brought the action against Donald C. Rider, Ashley Graham Rider, Joseph W. Pinson, South Carolina Insurance Company, and Nationwide Mutual Insurance Company ("Nationwide"). State Farm sought a declaration that the liability coverage of its "boatowners" insurance policy does not apply to damages sustained by Pinson, the driver of a vehicle which collided with the pickup truck, trailer and boat of State Farm's insured, Donald Rider. Specifically, State Farm contended that under South Carolina law such damages do not result from the "use" of the insured boat, and, therefore, are not covered by the policy.
 
 
 27
 The district court rejected State Farm's argument and held that the "boatowners" policy does provide coverage for damages sustained by Pinson in the collision. Therefore, the principal question on appeal is whether the district court erred in holding that a boat is in "use" when that boat rests passively as cargo on a trailer which is being pulled by a pickup truck.
 
 
 28
 There does not appear to be a precedent in South Carolina which, in the opinion of the undersigned, can be relied on as determinative of the issues in this case. Accordingly, the undersigned would certify the questions to the Supreme Court of South Carolina. Since the majority feels otherwise, the undersigned must dissent, being unable to adopt the opinion of the majority in this case.
 
 I. BACKGROUND
 
 29
 In or around Waterloo, South Carolina, on June 17, 1990, at approximately 11:30 p.m., Donald C. Rider drove south on State Highway 54 in a pickup truck towing a trailer bearing Rider's boat. Rider, unfamiliar with the road, failed to stop upon reaching the intersection of State Highway 54 and State Highway 6, because the stop sign for Highway 54 had been removed by unknown individuals. A vehicle, driven by Joseph W. Pinson, travelling eastbound on State Highway 6, the road with the right of way, collided with Rider's pickup truck, trailer and boat in the intersection.
 
 
 30
 There is no dispute as to the cause of the accident: Rider pulled into the path of an oncoming vehicle which possessed the right-of-way. The accident resulted from no negligence associated with Rider's handling of the boat. No one contends that Rider improperly loaded or secured the boat to the trailer, or that the boat contributed in any way to causing the collision. Indeed, the collision would have occurred whether Rider's trailer carried the boat, any other cargo, or no cargo at all. The boat was involved merely because it happened to be on the trailer at the time of the collision, during which Pinson's car struck Rider's pickup truck, his trailer, and the boat.
 
 
 31
 At the time of the accident, both Rider and Pinson were insured. Pinson had underinsured motorist coverage through Nationwide. Rider had automobile insurance through South Carolina Insurance Company.[1]
 
 
 32
 Rider also had a "boatowners" policy issued by State Farm. The "boatowners" policy includes "Watercraft Liability" coverage of up to $100,000 per occurrence "[i]f a claim is made or a suit is brought ... for damages because of bodily injury or property damage resulting from the ownership, maintenance or use of [the insured's] watercraft." The "boatowners" policy does not provide liability coverage for boat trailers.[2] Pinson has demanded and been denied compensation under Rider's State Farm "boatowners" policy.
 
 II. ANALYSIS
 
 33
 As noted above, State Farm's "boatowners" policy insured Rider against claims or suits "brought ... for damages because of bodily injury or property damage resulting from the ownership, maintenance or use of [the insured's] watercraft." Application of this provision to a given fact pattern raises two distinct issues: first, whether Rider's boat was in "use"; second, if so, did the damages "result[ ] from" that "use." The threshold inquiry is whether Rider's boat was in "use." Because the boat was not in "use," the threshold inquiry is determinative of this case. Therefore, I feel that it is unnecessary to reach the issue whether the accident or injury "resulted from" the "use" of the boat being carried on the towed trailer.
 
 
 34
 The case law of South Carolina's highest court provides little guidance in resolving the question before this Court. The South Carolina Supreme Court has not addressed whether a boat is in "use" while resting as cargo upon a trailer being towed by another vehicle. Indeed, there appear to be no decisions of the South Carolina Supreme Court which analyze "use" in either a boat case or a towing case. Accordingly, this issue should be referred to the Supreme Court of South Carolina. Because the majority does not wish to resort to certification herein, the undersigned is obligated to offer the following analysis of the issue.
 
 
 35
 Initially, it should be noted that, contrary to appellees' assertions, South Carolina's high court has not held the term "use" to be ambiguous. Appellees inaccurately cite Coletrain v. Coletrain, 238 S.C. 555, 121 S.E.2d 89 (1961), for the proposition that "use" is an ambiguous term. Coletrain held that, for purposes of an automobile liability insurance policy, one passenger exiting a cab had "used" the cab by unintentionally shutting the cab's door on the hand of another passenger. Id. In reaching that conclusion, the Coletrain court determined that a vehicle does not have to be driven or operated to be in "use." Id. at 91. No part of its analysis depended on a finding that "use" is an ambiguous term.
 
 
 36
 Appellees support their claim that Coletrain held the term "use" to be ambiguous by noting that Coletrain quotes the following language from a Fifth Circuit opinion:
 
 
 37
 Even were we to conclude that the terms used by the insurance company to spell out its liability were susceptible of more than the simple meaning we have already indicated, this would, of course, be of no benefit to the appellant. This is so because all must agree that one perfectly permissible construction of the words would be such as would comprehend the acts resulting in this injury. Thus, there would come into play the rule which appellant recognizes as applicable in Texas (as in South Carolina): That if the language of an insurance policy admits of more than one construction, that most favorable to the insured must be adopted....
 
 
 38
 121 S.E.2d at 90 (quoting Fidelity & Casualty Co. v. Lott, 273 F.2d 500, 502 (5th Cir.1960)). Appellees neglect to mention that Lott did not find ambiguous the language, "arising out of the ... use of the automobile." 273 F.2d at 502. More importantly, Coletrain itself does not hold "use" to be an ambiguous term; nor does Coletrain apply the rule of construing ambiguous language in favor of the insured.
 
 
 39
 Like the South Carolina Supreme Court, I do not perceive any ambiguity in the term "use." Accordingly, I am bound to follow the established principle of South Carolina law that "[i]nsurance policies are subject to the general rules of contract construction. Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." Sloan Constr. v. Central Nat'l Ins. Co. of Omaha, 269 S.C. 183, 236 S.E.2d 818, 819 (1977); accord Gambrell v. Travelers Ins. Cos., 280 S.C. 69, 310 S.E.2d 814 (1983); see also Standard Fire v. Marine Contracting & Towing Co., 301 S.C. 418, 392 S.E.2d 460, 461 (1990) ("Insurance companies are subject to general rules of contract construction.").[3] It simply does not comport with the "plain, ordinary and popular" meaning of the word "use" to say that a boat is in "use" when the boat is resting passively on a trailer as cargo.
 
 
 40
 The extent to which the interpretation asserted by the appellees departs from the "plain, ordinary and popular" meaning of the word "use" is easily demonstrated. For instance, according to the logic employed by appellees, were one to load a water heater onto a trailer, tow the trailer behind one's car, and have a collision, the water heater would be in "use." As such, a homeowner's insurance policy providing liability insurance for damages resulting from the "use" of the water heater would presumably cover damages caused by the collision. Indeed, the same result would obtain if it were a hot tub or any other type of cargo.
 
 
 41
 In short, the majority holds that any cargo is in "use" when it is being carried, hauled or toted. To so distort the meaning of the term "use" can serve only one purpose: increasing the pool of funds out of which an injured party may recover. Under South Carolina law, such is not the Court's role in interpreting an insurance policy. See Torrington Co. v. Aetna Casualty & Sur. Co., 264 S.C. 636, 216 S.E.2d 547, 550 (1975) (stating that "the parties have a right to make their own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties").
 
 
 42
 Appellees place much emphasis on this Court's decision in the case of American Fire & Casualty Co. v. Allstate Ins. Co., 214 F.2d 523 (4th Cir.1954). The issue presented in American Fire & Casualty was whether under South Carolina law a powerless, unmanned Jeep being towed by an automobile was being "used" under an insurance policy covering the Jeep. The court noted that the "jeep was moving on the road by means of its own running gear, ... subject to the vicissitudes and dangers of travel on the public highway and ... propelled under circumstances not infrequently encountered." Id. at 525. The Court found the situation not sufficiently "unusual" as to be outside "the contemplation of the parties to the insurance contract." Id. Therefore, the Court held that the Jeep was in "use." Id.
 
 
 43
 Appellees fail to appreciate the importance of a factual distinction between American Fire & Casualty and the case presently before the Court. American Fire & Casualty involved a Jeep pulled behind another automobile. The Jeep was travelling on its own tires. Rider's boat was of necessity travelling on a trailer. The trailer--not the boat--was travelling on its own tires. Accordingly, it is Rider's trailer rather than his boat which is analogous to the Jeep in American Fire & Casualty.
 
 
 44
 The distinction between the Jeep and Rider's boat is crucial in considering whether the latter was in "use" under the "plain, ordinary and popular" meaning of the term. In American Fire & Casualty, as noted by the Court, a part of the Jeep itself was being utilized--the running gear. Id. No part of Rider's boat was being utilized--it merely rested passively on the trailer. It may comport with the "plain, ordinary and popular sense" of the term "use" to hold that a vehicle is in "use" when some part of that vehicle is being utilized. Where an object, such as Rider's boat, merely lies upon a trailer as cargo in transit, and no part of it is being utilized in any manner, the same conclusion cannot be reached. Simply put, to hold that Rider's boat was in "use" is to extend the word "use" far beyond its "plain, ordinary and popular" meaning.
 
 
 45
 This conclusion is strengthened by reference to the decisions of the only other courts in the nation to have interpreted the word "use" in a similar situation. See Hannah v. Erie Ins. Exch., 537 A.2d 182 (Del.1987); State Farm Fire & Casualty Co. v. Thomas, No. 22, 1986 WL 9001 (Tenn.Ct.App. Aug. 21, 1986). Both courts held that towing a boat on a trailer does not constitute a "use" of the boat for purposes of liability insurance covering the boat. See Hannah, 537 A.2d 182; Thomas, 1986 WL 9001.
 
 
 46
 Another court has held that towing a boat on a trailer for the purpose of obtaining repairs to the boat constitutes maintenance under a boatowner's liability insurance policy providing coverage for damages "arising out of the ownership, maintenance or use" of the boat. State Farm Fire & Casualty Co. v. Erwin, 393 So.2d 996 (Ala.1981). Observing that it had, in a previous case, held the term "maintenance" to be ambiguous, the Erwin court stated that "the word 'maintenance,' which is the act of maintaining, should be given one or more of the meanings that will give effect to the purpose of the insurance, which is to afford protection." Id. at 998 (quoting Alabama Farm Bureau Mut. Casualty Ins. Co. v. Tubbs, 293 Ala. 432, 304 So.2d 589, 591 (1974)). Thus, the Alabama court's decision was expressly motivated by a policy of interpreting the contractual language in a way which would expand coverage.
 
 
 47
 In contrast, neither the Delaware court, in Hannah, nor the Tennessee court, in Thomas, interpreted the term "use" with the goal of either expanding or restricting insurance coverage. Likewise, under South Carolina law, a court's analysis of an unambiguous term in an insurance contract may not be driven by a desire to create coverage. See Torrington Co., 216 S.E.2d at 550 (stating that "it is not the function of this Court to rewrite ... or torture the meaning of a policy to extend coverage never intended by the parties"). Therefore, while Erwin offers no guidance in addressing the question before this court, both Hannah and Thomas are instructive.
 
 
 48
 Hannah involved injuries sustained by a passenger in a pickup truck towing a boat when the pickup ran a stop sign and collided with a tractor-trailer. 537 A.2d at 182. An endorsement to a homeowner's insurance policy extended coverage for personal liability and medical payments to others "to apply to the ownership or use of any [insured] watercraft." Id. at 182-83. The Delaware Supreme Court agreed with the trial court that the term "use" is "clear and unambiguous" and stated that:
 
 
 49
 [a]s the trial court explained, "... it would contradict the ordinary meaning of words ... to say that the Hannah boat was 'in use' merely because it was carried on a trailer to a water site ... at most, the boat was in transit, preliminary to use." The trial court determined that the distinction between an insured vehicle in tow and an insured boat merely being transported as cargo is crucial, and this Court agrees with that determination.
 
 Id. at 183.[4]
 
 50
 Thomas involved damages sustained by a motorist whose automobile was struck when the trailer and boat being towed by the insured pushed the insured's car into the path of the motorist's oncoming automobile. 1986 WL 9001, at*1. The insured's "boatowners" insurance policy provided watercraft liability coverage for "bodily injury or property damage resulting from the ownership, maintenance or use of [the insured's] watercraft." Id. The court correctly noted that an "insurance contract seeks to keep the insurance risks within reasonable bounds. The premium is based on this. Not every risk can be insured against." Id. at*2. The Thomas court further noted that the "boatowners" policy insured against property damage to the trailer, but did not insure against liability resulting from use of the trailer.[5] Id. at* 3. The court concluded that while being towed on a trailer, the boat "is then cargo. It is the trailer that is being used.... A boat has no use on a trailer and it is only cargo at this place." Id.
 
 
 51
 The facts in Hannah and Thomas are similar to the facts presented in this appeal, and the reasoning employed by the Hannah and Thomas courts is persuasive. Those cases confirm what is already clear: to hold that a boat is in "use" while it rests passively as cargo on a trailer is to stretch the unambiguous word "use" beyond its "plain, ordinary, and popular" meaning. If South Carolina law is to be extended in this manner, it should be left to that state's supreme court to do so. Unless this Court desires to certify the question to the South Carolina Supreme Court, this case is an improper vehicle for such an unwarranted extension of South Carolina law. Accordingly, I would hold that Rider's boat was not in "use" merely because it was being carried as cargo on Rider's trailer.
 
 III. CONCLUSION
 
 52
 For the above stated reasons, I would reverse the district court's decision and remand for entry of an order declaring that the "Watercraft Liability" insurance issued by State Farm to Donald C. Rider, does not cover damages sustained by Joseph W. Pinson during his collision with Rider's pickup truck, boat trailer and boat.
 
 
 
 [1]
 The district court did not address whether coverage was also provided under the Policy's "ownership" clause. We also decline to address this issue
 
 
 [2]
 South Carolina cases have sometimes failed to clearly differentiate whether the vehicle was in "use" and whether the vehicle's "use" contributed to the injuries. See Hite v. Hartford Acc. & Indem. Co., 288 S.C. 616, 344 S.E.2d 173, 176 (1986) ("What appears to be crucial to many courts in determining whether an injury produced by another vehicle or person falls within the ambit of 'use' is the existence of a causal connection between an accident or injury and the use of the vehicle." (citations omitted)). Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106, 108 (S.C.1992), indicates that these are separate inquiries
 
 
 [3]
 The following question was certified: "Is the insurer liable under the uninsured motorist provision involving injuries 'arising out of the ownership maintenance, or use' of an uninsured vehicle ... for gunshot injuries sustained by a person traveling on a public highway in an insured vehicle and inflicted during a vehicular chase by an unknown operator of an unidentified vehicle?" Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106 (S.C.1992) (relied upon by this Court to reverse Wausau Underwriters Ins. Co. v. Howser, 727 F.Supp. 999 (D.S.C.1990), in Wausau Underwriters Ins. Co. v. Howser, 978 F.2d 1257 (4th Cir.1992))
 
 
 [4]
 Of course, we express no opinion on whether the Policy would have provided coverage if Pinson's vehicle had only come into contact with Rider's truck
 
 
 [1]
 Pinson has collected $15,000.00 from South Carolina Insurance Company. In exchange for that payment, Pinson released Rider from personal liability for damages arising out of the June 17, 1990, collision. Pinson reserved his right to proceed against Rider for the limited purpose of establishing claims under Pinson's Nationwide underinsured motorist policy and Rider's State Farm "boatowners" policy
 
 
 [2]
 In its Definitions section, the policy states that "watercraft" means "the boats and motors described in the declaration; and[ ] newly acquired watercraft." In the same section, the policy defines "newly acquired watercraft" to mean "a boat, motor or boat trailer under Section I [property damage coverage]; [ ] a boat or motor under Section II [liability coverage]."
 
 
 [3]
 Similarly, this Court has held that if not ambiguous, "the terms of the policy are to be taken and understood in their ordinary sense and the policy must receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties." See Abady v. Hanover Fire Ins. Co., 266 F.2d 362, 364 (4th Cir.1959)
 
 
 [4]
 Appellees maintain that Hannah turns only on a lack of causal connection between the boat and the injuries. However, the Hannah court addressed both causal connection and "use," stating that "the trial court did not err in holding that ... the boat was not in 'use' and that no causal connection existed between the alleged use of the boat and the injuries sustained." 537 A.2d at 184 (emphasis added)
 
 
 [5]
 Rider's "boatowners" policy also provides coverage for damage to a trailer, but not for damages from the use of a trailer