Diane SASS, Plaintiff-Appellant,

AURORA HEALTH CARE, INC., Subrogated-Plaintiff,

v.

ACUITY, A Mutual Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 2007AP2943. Submitted on briefs September 19, 2008.
—Decided February 25, 2009.*

2009 WI App 32

(Also reported in 765 N.W.2d 582.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael I. Tarnoff* of *Warshafsky, Rotter, Tarnoff & Bloch, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arthur P. Simpson* and *Christine M. Rice* of *Simpson & Deardorff, S.C.*, Milwaukee.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J. This case arises out of an automobile accident in which Diane Sass was a passenger in a vehicle owned and operated by Todd Johnson.[1] Sass was allegedly injured during the accident when Johnson's boat came loose from the trailer of his automobile and struck the cab of the vehicle. Sass made bodily injury claims against Johnson's insurance carrier Acuity, a Mutual Insurance Company, including a declaratory judgment action claiming coverage under a watercraft endorsement attached to Johnson's homeowner's policy. Acuity acknowledged coverage under Johnson's automobile liability policy and paid the policy limit to Sass. It denied coverage under the

---

[1] Johnson is not a party to the action and did not provide any facts by affidavit or otherwise.

homeowner's policy and moved for summary judgment. The trial court held that Sass was barred from receiving coverage under the language of the homeowner's policy and its watercraft rider and granted Acuity's motion. We agree with the trial court's thorough and well-reasoned decision and affirm.

¶ 2. The facts are not in dispute and are succinct; there was no testimony taken, and the trial court's decision was based on the pleadings and the insurance policy. On April 1, 2006, in Titusville, Florida, Sass was a passenger in a 1996 Dodge automobile owned and operated by Acuity's insured, Johnson. The Dodge was towing a trailer onto which Johnson had loaded a boat. An accident occurred, and Sass was allegedly injured when the boat came loose from the trailer and struck the cab of the vehicle.

¶ 3. At the time of the accident, Johnson carried both an automobile liability policy and a homeowner's insurance policy with Acuity. Sass sought recovery under both policies. With regard to the homeowner's policy, Sass moved for a declaratory judgment that Acuity provide coverage because of the attached watercraft liability endorsement. First, Sass alleged that Johnson was negligent in the manner in which he loaded his boat onto the trailer and that her injuries resulted from the negligence of Johnson in the ownership, maintenance, use and loading of his watercraft. Second, she alleged that the homeowner's insurance policy is contextually ambiguous in that a reasonable person would conclude that the policy provided coverage for Johnson's negligence in failing to properly secure the boat onto his vehicle trailer. Acuity acknowledged coverage under the automobile liability policy and paid the policy limit to Sass. It denied coverage under the homeowner's policy. Acuity moved for sum-

mary judgment. The trial court held there was no coverage under the homeowner's policy and granted Acuity's motion for summary judgment. Sass appeals.

¶ 4. Our review of a grant of summary judgment is de novo. Summary judgment methodology is well understood and will not be repeated here except to note that it is appropriate when there are no genuine issues of material fact and one party is entitled to a judgment as a matter of law. *Walker v. Tobin*, 209 Wis. 2d 72, 76, 568 N.W.2d 303 (Ct. App. 1997); WIS. STAT. § 802.08(2). The parties agree that no material facts are in dispute. This appeal requires the interpretation of an insurance policy, for which our review is likewise de novo. *Folkman v. Quamme*, 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857.

¶ 5. Insurance policy interpretation requires a three-step process. *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65. First, the court must examine the facts to determine whether the policy's insuring agreement makes an initial grant of coverage. *Id.* Second, if there is an initial grant of coverage, the court is to examine the exclusions to determine whether any of them preclude coverage. *Id.* Third, the court looks to whether any exception to the applicable exclusions reinstate coverage. *Id.* The policy should be construed so as to give effect to the parties' intentions. *Folkman*, 264 Wis. 2d 617, ¶ 12. "[W]hen the terms of an insurance policy are plain on their face, the policy must not be rewritten by construction." *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

757

¶ 6. If, however, policy language is reasonably susceptible of more than one construction, it is ambiguous. *Varda v. Acuity*, 2005 WI App 167, ¶ 8, 284 Wis. 2d 552, 702 N.W.2d 65. Such ambiguities are resolved against the insurer who choses the language and in favor of the insured. *Id.* Whether ambiguities exist is, however, a question of law. *Id.* To determine whether coverage exists under a particular policy, we examine the facts of the insured's claim to ascertain whether the insuring agreement makes an initial grant of coverage. *Id.*, ¶ 9. If an initial grant is triggered, we then look to see if any exclusions apply; exclusions are narrowly or strictly construed against the insurer and any ambiguities are resolved in favor of coverage. *Id.* "Generally, language present in an insurance policy must be interpreted to mean what a reasonable person in the position of the insured would understand that language to mean." *Balz v. Heritage Mut. Ins. Co.*, 2006 WI App 131, ¶ 9, 294 Wis. 2d 700, 720 N.W.2d 704.

¶ 7. We begin with the language of the homeowner's insurance policy in effect at the time of the accident. This policy provides in pertinent part:

### COVERAGE —PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** which this coverage applies, we will:

1. Pay up to our limit of liability for damages for which the **insured** is legally liable . . . .

¶ 8. The policy excludes coverage for the following relevant exclusions:

758

1. **Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:**

. . . .

(e)　Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured . . . .

(f)　Arising out of:

(1) The ownership, maintenance, use, loading or unloading of a watercraft described below . . . .

. . . .

This exclusion does not apply while the watercraft is stored.

¶ 9.　The policy has an "Additional Forms Information" section which attaches a "Watercraft Liability" form to the policy. An additional premium was paid for this coverage and it provides, in pertinent part:

The following form is attached to this policy:

SF-356 (8–02) WATERCRAFT LIABILITY

For an additional premium, Coverage E—Personal Liability and Coverage F—Medical Payments to Others Apply to BODILY INJURY or PROPERTY DAMAGE Arising out of:

a. The ownership, maintenance, use, loading or unloading of a watercraft described below . . . .

All other provisions of this policy apply.

¶ 10.　It is undisputed that Acuity's homeowner's policy makes an initial grant of coverage for Sass's bodily injury claim under the "Coverage E—Personal

759

Liability" provision. It is also undisputed that the policy contains a motor vehicle exclusion—"Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage"—which excludes from the initial grant of coverage, coverage for: bodily injury to others arising out of the insured's "ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured."

¶ 11. Sass rests her argument for coverage on the separate "Watercraft Liability" endorsement that Johnson carried under his Acuity homeowner's policy. Sass argues that the watercraft coverage includes the causal negligence of Acuity's insured, in the manner in which the boat in question was loaded onto the insured's trailer, resulting in the injuries sustained by Sass.

¶ 12. Specifically, Sass argues the following: first, that the watercraft coverage, for which Johnson paid an additional premium, applies to the accident because the accident arose out of the "use" of Johnson's boat; second, that the watercraft coverage applies to the accident because the accident arose out of the "loading or unloading" of Johnson's boat; third, that an insured would have a reasonable expectation that his coverage would include injuries caused by his negligent loading of his boat; and fourth, that Acuity's reliance on the words "[a]ll other provisions of this policy apply" as an exclusion from coverage is not valid, because the phrase is both vague and contextually ambiguous.

¶ 13. The parties acknowledge that Wisconsin appellate courts have not addressed coverage disputes over the language of watercraft liability endorsements.

760

The cases which they have cited from foreign jurisdictions suggest differing conclusions on the issue of whether towing a boat on a trailer constitutes using the boat.

¶ 14. In *Vann v. United Farm Family Mutual Insurance Co.*, 790 N.E.2d 497 (Ind. App. 2003), which is relied upon by Acuity, the court of appeals of Indiana gave effect to a motor vehicle exclusion provision and found that there was no coverage under a Rural Guardian insurance policy issued by Farm Bureau,[2] even though the insured had purchased a watercraft liability endorsement. We agree with the trial court that this case is readily distinguishable.

¶ 15. The Vanns' claim against the insured was premised upon an alleged negligent use of a motor vehicle and not upon the alleged negligent use of a watercraft. *Id.* at 501. Moreover, in addressing the question of whether a boat was in use while it was being towed, the court noted that the watercraft endorsement did not

> actually contain language stating that an occurrence is covered as long as it arises out of the ownership, maintenance, use, loading, unloading or entrustment of the boat covered by the watercraft endorsement .... [N]either the Policy nor the watercraft endorsement clearly sets forth the conditions under which liability coverage is triggered with regard to the boat.

*Id.* at 503–04.

¶ 16. Also, the court in *Vann* commented that the watercraft liability endorsement was vague with re-

---

[2] A Rural Guardian policy covers an insured's farm in much the same way a homeowner's policy covers an insured's home. *Vann v. United Farm Family Mut. Ins. Co.*, 790 N.E.2d 497, 500 n.1 (Ind. App. 2003).

spect to coverage and noted that any doubts as to coverage would have to be construed against the insurer. *Id.* at 504. Since, however, it found the motor vehicle exclusion applicable due to the basis upon which the claim was premised, it did not reach that issue. *Id.* Thus, *Vann* is of little guidance in determining whether a boat being towed is a boat in use.

¶ 17. In *State Farm Fire and Casualty Co. v. Pinson*, 984 F.2d 610 (4th Cir. 1993), which was discussed in *Vann* and which is relied upon by Sass, the federal court noted that in South Carolina the term "use" had been broadly and not narrowly construed. *Pinson*, 984 F.2d at 612. On that basis it held that under South Carolina law, a boat was "in use" while it was being towed on a trailer when an accident occurred. *Id.* at 613. Its reasoning was that a boat "must be towed in order for a landlocked owner to derive any enjoyment from boat ownership." *Id.* at 612.

¶ 18. In that case, the insured was towing his pontoon boat behind his pickup truck in Waterloo, South Carolina. *Id.* at 611. The insured's truck and boat were struck by a vehicle driven by Joseph Pinson. *Id.* Pinson was seriously injured. *Id.* The insured's truck was insured by South Carolina Insurance Company; his boat by State Farm. *Id.* The State Farm boatowner's liability policy provided for damages "resulting from the ownership, maintenance or use of your watercraft." *Id.* Pinson argued that his injuries arose in part from the boat's use or ownership or both. *Id.*

¶ 19. In its decision, the court directly addressed the issue of whether the boat was in use when being towed at the time of the accident. *Id.* at 612. In finding that it was, the court commented that many boats are not permanently moored and are frequently towed. *Id.* at 613. As noted above, it reasoned that a boat "*must* be

towed in order for a landlocked owner to derive any enjoyment from boat ownership." *Id.* at 612.

¶ 20. The majority in *Pinson* seemed to place considerable emphasis on the reason why a boat was being towed in finding that it was in use. It did not state that the act of towing alone was using the boat. In distinguishing the towing of a boat on a trailer from some other object, the court stated, "On the other hand, unless a boat is permanently moored, it must be frequently transported to-and-from the water to be put to its intended purpose." *Id.* at 613.

¶ 21. The condition which led the court to conclude that the towed boat was in "use" leaves significant unanswered questions. What if the boat was being towed for a different purpose? Further, what if the purpose or destination changed in mid-journey? Many different scenarios are plausible and the coverage issue becomes dependant on the purpose of the towing. We agree with the trial court that the conditional nature of the majority's reasoning—the need to examine in each case the purpose for which the boat is being towed— makes this reasoning unconvincing.

¶ 22. The dissent in *Pinson*, on the other hand, provided a more persuasive rationale, on which both the trial court and this court agree. The dissent noted that there was no ambiguity in the word "use" and that the South Carolina courts had not held that there was. *Id.* at 616. It emphasized that, as is true in the instant case, a court must enforce, not write, contracts of insurance. *See id.* In so doing, a court must give language its plain, ordinary, and popular meaning. *Id.* The dissent concluded that "[i]t simply does not comport with the 'plain, ordinary and popular' meaning of the word 'use' to say that a boat is in 'use' when the boat is resting passively on a trailer as cargo." *Id.* It pointed

out that no part of the boat was being utilized in the towing process as might be the case with the towing of another type of vehicle. *Id.* at 616–17. Finally, quoting the Delaware Supreme Court in *Hannah v. Erie Insurance Exchange*, 537 A.2d 182 (Del. 1987), another case with similar facts, the dissent noted that the Delaware Supreme Court agreed with the Delaware trial court that the term "use" is "clear and unambiguous:"

> As the trial court explained, " . . . it would contradict the ordinary meaning of words . . . to say that the Hannah boat was 'in use' merely because it was carried on a trailer to a water site . . . at most, the boat was in transit, preliminary to use." The trial court determined that the distinction between an insured vehicle in tow and an insured boat merely being transported as cargo is crucial, and this Court agrees with that determination.

*Pinson*, 984 F.2d at 618.

¶ 23. Similarly, though Wisconsin appellate courts have held that the word "use" is to be broadly construed, we have not held that the word "use," in and of itself, is an ambiguous term. In *Garcia v. Regent Insurance Co.*, 167 Wis. 2d 287, 295, 481 N.W.2d 660 (Ct. App. 1992), we stated:

> [O]ur inquiry is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within the risk for which the parties to the contract reasonably contemplated there would be coverage. [*Lawver v. Boling*, 71 Wis. 2d 408, 416, 238 N.W.2d 514 (1976)]. This question is usually resolved by determining whether the alleged "use" is one which is reasonably consistent with the inherent nature or "use" of the vehicle. *See id.*; *see also Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis. 2d 450, 458, 468 N.W.2d 432, 435 (1991).

We went on to emphasize our focus for determining whether there was "use" as the coverage intended:

[I]n each instance we ask whether the injury "grew out of," "had its origin in," or "flowed from" the use of the vehicle. [*Tasker v. Larson*, 149 Wis. 2d 756, 761, 439 N.W.2d 159, (Ct. App. 1989)] (quoting *Shinabarger v. Citizens Mut. Ins. Co.*, 282 N.W.2d 301, 305 (Mich. Ct. App. 1979)). Thus, "use" takes in activities incidental to the actual operation of the vehicle. *See Thompson*, 161 Wis. 2d at 458, 468 N.W.2d at 435. These authorities and others, however, do not suggest that the term "use" must be read so expansively as to include a boundless number of activities. Even incidental uses must be related to the "inherent nature of the vehicle. *See id.*

*Garcia*, 167 Wis. 2d at 296.

¶ 24. Thus, we look to the "inherent nature of the vehicle" to determine whether the particular activities in question constitute "use." A boat, by its nature, is a watercraft or vessel. It may be powered manually by rowing, by wind in sails, or by a motor. Its nature is to be used upon water. The act of transporting a boat on a trailer may be performed in order to be able to use the boat, or preliminary to its actual use, but would not be a normal incident of the use itself considering the inherent nature of what a boat is.

¶ 25. Accordingly, when a boat is being towed on a trailer, the towing vehicle is in use, as is the trailer itself. The boat itself, considering its nature, is not. It constitutes cargo upon the trailer at that time. We therefore agree with the trial court that Johnson's boat constituted cargo upon the trailer at the time of the accident.

¶ 26. In her next argument, Sass states that if we "agree[]" with the trial court that the accident in question did not involve a 'use' of the watercraft," we should hold that the policy nevertheless provides coverage because the accident arose out of the "loading or unloading of a watercraft."

¶ 27. Acuity insists that there was no coverage because the insured was not "actively engaged" in loading or unloading the watercraft at the time the injury occurred. It relies on *Tomlin v. State Farm Mutual Automobile Liability Ins. Co.*, 95 Wis. 2d 215, 290 N.W.2d 285 (1980), which states:

> Loading or unloading of a vehicle is a specific use of a vehicle, and the words "loading or unloading" are an extension of the "use" clause of the policy. *Allstate Ins. Co. v. Truck Ins. Exchange*, 63 Wis. 2d 148, 157, 158, 216 N.W.2d 205 (1974); *Ermis v. Federal Windows Mfg. Co.*, 7 Wis. 2d 549, 553, 97 N.W.2d 485 (1959). This court has held that in order to find coverage under the "loading or unloading" clause, a person must be actively engaged in loading or unloading the automobile, and the negligent act must be a part of the loading or unloading activity. *Amery Motor Co. v. Corey*, 46 Wis. 2d 291, 297, 298, 174 N.W.2d 540 (1970). This rule was reiterated in *Allstate Ins. Co. v. Truck Ins. Exchange*, supra, 63 Wis. 2d at 155, 216 N.W.2d 205. *See also: Continental National Ins. Co. v. Carriers Ins. Co.*, 55 Wis. 2d 533, 537, 200 N.W.2d 584 (1972); *Sampson v. Laskin*, 66 Wis. 2d 318, 334–336, 224 N.W.2d 594 (1975).

¶ 28. Sass argues that active loading is not required for coverage and points us to the following quote from *Komorowski v. Kozicki*, 45 Wis. 2d 95, 104, 172 N.W.2d 329 (1969):

> It is to be noted that in the policy of insurance involved in the instant case the appellant agreed to pay

> on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by accident "arising out of the ownership, maintenance or use of the automobile," including the "loading and unloading."
>
> The effect of this language is to extend the coverage to include acts of "loading and unloading" incidental to the use of the vehicle.
>
> The instant policy does not require that the injury occur during or in the course of the "loading and unloading." The appellant insurance company did not so limit its liability. The words "arising out of" are broad, general and comprehensive, effecting broad coverage.
>
> If the draftsman of the appellant's policy intended to limit coverage to accidents which occur in the course of "loading and unloading," he could have specifically provided so.

Sass seems to take this case to hold that the requirement that the insured be actively engaged in loading or unloading cannot be inferred from a policy but must be spelled out. Sass argues that if Acuity had wanted to limit its coverage to injuries taking place during the active loading or unloading process, it could have easily done so, but it did not.

¶ 29. Acuity and Sass cite to viable countering authority for their opposing positions on this point. The trial court agreed with Acuity's position. We choose not to reach this issue. First, we note that Acuity proffered its argument on this point in order to respond to Sass's argument on this point. However, Acuity ultimately argued to the trial court, and again argues here, that this point need not be reached because whether the "active" component to the loading or unloading is an

inferred component that must exist for coverage is not relevant to the inquiry. We agree with Acuity that we need not reach this point because it does not factor into our decision. In fact, if we did consider it a necessary factor in our decision, we would likely certify this case to our supreme court.

¶ 30. The relevant inquiry is instead whether the watercraft endorsement provides coverage for the negligent loading or unloading of the boat *onto* or *off of* another vehicle, which here was the trailer. For our purposes, we are satisfied, as was the trial court, that the ordinary and reasonable construction of the "loading and unloading" language of the watercraft form is to provide coverage for the loading and unloading *of the boat with persons or objects,* not the loading or unloading of the boat onto or off of another vehicle.

¶ 31. Thus, the only reasonable argument to make for coverage for negligent loading or unloading is that the accident and alleged injury arose out of the loading or unloading of the boat *onto the trailer.* This argument, however, gets Sass nowhere because it brings into play Acuity's motor vehicle exclusion which excludes coverage for both the motor vehicle and the trailer.

¶ 32. Sass nonetheless tries another approach arguing that "a reasonable person in the position of Mr. Johnson would expect insurance coverage for negligently loading his boat onto his trailer" because he "has paid an additional premium of $630 in order to obtain a very broad grant of liability coverage for personal injury, arising out of the loading of his watercraft." Sass's argument is circular and self-serving. The trial court appropriately addressed the expectation of the reasonable insured regarding coverage in this situation:

The policy in question is a homeowner's policy with a clear and unambiguous motor vehicle exclusion which includes trailers. Reasonable persons would know that an automobile liability policy and a homeowner's liability policy provide two different kinds of coverage. They would know that their homeowner's policy excludes liability for their use of their motor vehicles. That is why they purchase both types of policies.

When [people] purchase[] an extra watercraft liability endorsement it is reasonable to assume that they are concerned about liability which they might incur as a result of using their boat and that they want coverage for that possibility. It would not be reasonable for [people] to assume that the coverage would extend to their loading the boat onto a trailer to transport it. It would be much more reasonable for [people] to assume that since it is the trailer that was being used to transport the boat they would have the benefit of whatever coverage insured the trailer . . . . There is nothing about the structure of the policy or the language used which would have led [] reasonable [people] to any false conclusions or expectations about their coverage. The Court concludes, therefore, that the policy is not ambiguous.

¶ 33. The trial court's rationale is emphasized by the specific language in the watercraft endorsement which provides that "[a]ll other provisions of this policy apply." Moreover, the "ordinary and reasonable" construction of the "loading and unloading" language of the watercraft form is to provide coverage for the loading and unloading *of the boat with persons or objects*. It is not reasonable to conclude that the additional premium paid for watercraft liability coverage vitiates the viable motor vehicle exclusion in the policy.

¶ 34. Sass's final argument is: Acuity's reliance on the words "[a]ll other provisions of this policy apply" as an exclusion from coverage in this case is misapplied; at the very least, the words are contextually ambiguous. We note that this argument ties into her last and that we have already pointed specifically to this language as *un*ambiguous. Sass contends that this language is "broad and imprecise" and "does not adequately advise the insured of the specific exclusion regarding the operation of a motor vehicle relied upon by Acuity." As already noted, we cannot agree. Rather, we agree with the trial court that the language "[a]ll other provisions of this policy apply," in fact, puts a reasonable person on notice that the exclusion provisions, which certainly are "other provisions of the policy," are not affected by the watercraft endorsement.

¶ 35. Put another way, the language "[a]ll other provisions of this policy apply," is not "reasonably" susceptible of more than one construction. *See Varda,* 284 Wis. 2d 552, ¶ 8. Thus, because the terms are "plain on their face, the policy must not be rewritten by construction." *Smith,* 155 Wis. 2d at 811. The Acuity homeowner's policy, with its watercraft liability endorsement, does not provide coverage for Sass's bodily injury claims. Further, the policy is not contextually ambiguous.

*By the Court.*—Judgment affirmed.

¶ 36. BROWN, C.J. *(concurring).* While I agree with most of the lead opinion, I must respectfully disagree with the conclusion that "loading and unloading," as that term appears in Acuity's "Watercraft Liability" attachment to this homeowner's policy, means "the loading and unloading *of the boat with persons or objects.*" Majority, ¶ 30. Rather, I agree with Acuity that

the reasonable person in the position of the insured would believe that this term means being "actively engaged" in the actual loading and unloading of the boat. Therefore, the policy covers the process of transferring a boat onto or off of a vehicle, a trailer, a flat bed, a dry dock station or something similar. Numerous Wisconsin cases say as much and these cases are found at ¶ 27 of the majority opinion. In my opinion, when a person is entering onto or exiting off of a boat, that action is covered by the word "use" as it appears in a watercraft liability policy. Coming and going is such a normal part of boating that it stretches credulity to suggest otherwise. By defining "loading and unloading" to mean the act of entering or leaving a boat (or putting things on a boat and taking them off), we would be committing the sin of assigning surplusage to an insurance policy, something we should avoid.

¶ 37. For purposes of this case, once the boat was loaded and was in the process of being towed, the clause was not operative. I disagree with Sass that a person in the position of the reasonable insured would believe that "loading and unloading" includes the risk of something happening while a boat is being towed or carried from one destination to another.